## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | |
|---|---|
| In re: | **Chapter 11** |
| **XINERGY LTD.,** *et al.,* | **Case No. 15-[     ] (___)** |
| | **(Joint Administration Requested)** |
| **Debtors.**[1] | |

## MOTION OF THE DEBTORS AND DEBTORS IN POSSESSION FOR ENTRY OF AN ORDER APPOINTING AMERICAN LEGAL CLAIMS SERVICES, LLC AS CLAIMS, NOTICING, AND BALLOTING AGENT

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by their undersigned counsel, hereby file this Motion (the "Motion"), for entry of an order, the proposed form of which is attached as Exhibit A (the "Order"), pursuant to 28 U.S.C. § 156(c), section 105(a) of Title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code"), and Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtors' employment and retention of American Legal Claim Services, LLC ("ALCS") as the Debtors' notice, claims and balloting agent in connection with these chapter 11 cases effective as of the Petition Date (as defined below).  In support of

---

[1]     The Debtors, along with the last four digits of each Debtor's federal tax identification number, are listed on Schedule 1 attached hereto.

HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
Tyler P. Brown (VSB No. 28072)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

this Motion, the Debtors rely on the Declaration of Jeffrey Pirrung, the Managing Director of

ALCS (the "Pirrung Declaration"), which is attached hereto as Exhibit B and the Declaration of

Michael R. Castle in support of Chapter 11 Petitions and Related Motions (the "Castle

Declaration").  In further support of this Motion, the Debtors submit as follows:

### I.        Jurisdiction, Venue and Predicates for Relief

1.        The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core

proceeding within the meaning of 28 U.S.C. §157(b)(2).

2.        The predicates for the relief requested herein are 28 U.S.C. § 156(c), sections

105(a) of the Bankruptcy Code and Bankruptcy Rule 2002.

### II.        Background

3.        On the date hereof (the "Petition Date"), each of the Debtors filed with the Court

their respective voluntary petitions for relief under chapter 11 of Title 11 of the Bankruptcy

Code, commencing the above-captioned chapter 11 cases.  The Debtors continue to operate their

businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.

4.        No creditors' committee has been appointed in these cases.  No trustee or

examiner has been appointed.

5.        Contemporaneously herewith, the Debtors have filed a motion requesting joint

administration of their chapter 11 cases.

6.        A full description of the Debtors' business operations, corporate structures, capital

structures, and reasons for commencing these cases is set forth in full in the Castle Declaration,

which was filed contemporaneously with this Motion and which is incorporated herein by

reference.  Additional facts in support of the specific relief sought herein are set forth below.

### III.    Relief Requested

7.      By this Motion, the Debtors respectfully request entry of the Order appointing ALCS as claims, noticing and balloting agent in these chapter 11 cases effective as of the Petition Date.

8.      With the large number of creditors and equity holders in these cases, by appointing ALCS as the claims, noticing and balloting agent in these chapter 11 cases, the Debtors believe that the distribution of notices and the processing of claims will be expedited, and the Office of the Clerk of the Court (the "Clerk's Office") will be relieved of the administrative burden of processing what may be a large number of claims.

### Qualifications

9.      ALCS is a data processing firm that specializes in chapter 11 administration, consulting, and analysis, including noticing, claims processing and other administrative tasks in Chapter 11 Cases.  ALCS has assisted and advised numerous chapter 11 debtors in connection with noticing and claims administration.

10.      Indeed, ALCS has acted as the official claims, noticing and balloting agent in many large bankruptcy cases in Virginia and other districts nationwide.  *See*, *e.g.*, *In re MacKeyser Holdings, LLC*, Case No. 14-11550 (CSS) (Bankr. D. Del. June 20, 2014); *In re Refco Public Commodity Pool, L.P.*, Case No. 14-11216 (BLS) (Bankr. D. Del. June 5, 2014); *In re: Dominion Club, L.C.*, Case No. 11-30187 (KRH) (Bankr. E.D. Va. 2011) ; *In re The Glebe, Inc.*, Case No. 10-71553 (JRWK) (Bankr. W.D. Va. 2010); *In re Big M, Inc.*, Case No. 13-10233 (Bankr. D. NJ 2013); *In re Journal Register Company*, Case No. 12-13774 (Bankr. S.D.N.Y. 2012);  *In re: Raser Technologies, Inc.*, Case No. 11-11315 (Bankr. D. Del. 2011); *In re: Alabama Aircraft Industries, Inc.*, Case No. 11-10452 (Bankr. D. Del. 2011); *In re: RoomStore,*

*Inc.*, Case No. 11-37790 (Bankr. E.D. VA. 2011); *In re: Qimonda Richmond, LLC*, Case No. 09-10589 (Bankr. D. Del. 2009).

## Scope of Services

11.    Subject to the Court's approval, the Debtors will employ ALCS to provide the services set forth in the Services Agreement by and between the Debtors and ALCS, dated April 3, 2015 (the "Services Agreement"), a copy of which is attached hereto as Exhibit C.    In accordance with the Service Agreement, the Debtors request that ALCS be authorized to perform the following tasks, if necessary, in its role as the claims, noticing and balloting agent (the "Claims, Noticing and Balloting Services"), as well as all quality control relating thereto:

(a)    Prepare and serve required notices and documents in this case in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors and/or the Court, including (i) notice of the commencement of this case and the initial meeting of creditors under Bankruptcy Code § 341(a), (ii) notice of any interests bar date, (iii) notices of transfers of claims or interests, (iv) notices of objections to claims or interests and objections to transfers of claims or interests, (v) notices of any hearings on a disclosure statement and confirmation of the Debtors' plan of liquidation, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan and (vii) all other notices, orders, pleadings, publications and other documents as the Debtors or Court may deem necessary or appropriate for an orderly administration of this case;

(b)    Maintain an official copy of the Debtors' schedules of assets and liabilities and statement of financial affairs (collectively, the "Schedules"), listing the Debtors' known creditors and equity holders and the amounts owed thereto;

(c)    Maintain (i) a list of all potential creditors, equity holders and other parties-in-interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002(i), (j), and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; and update and make said lists available upon request by a party in interest or the Clerk;

(d)    Furnish a notice to all potential creditors and equity holders of the last date for the filing of proofs of claim and proofs of interest and a form for the filing of a proof of claim and proof of interest, after such notice and form are approved by the Court, and notify said potential creditors and equity holders of the existence, amount and classification of their respective claims or interests as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the

4

Schedules indicate no debt due to the subject party) on a customized proof of claim form or proof of interest form provided to potential creditors and equity holders;

(e)     Maintain a post office box or address for the purpose of receiving proofs of claim and interests and returned mail, and process all mail received;

(f)     For all notices, motions, orders or other pleadings or documents served, prepare and file or cause to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

(g)     Process all proofs of claim or interests received, including those received by the Clerk's office, and check said processing for accuracy, and maintain the original proofs of claim or interests in a secure area;

(h)     Maintain the official claims and interests register for the Debtors (the "Interests Register") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Interests Register; and specify in the Interests Register the following information for each claim or interest docketed: (i) the number assigned, (ii) the date received, (iii) the name and address of the claimant or equity holder and agent, if applicable, who filed the claim or interest, (iv) the amount asserted, (v) the asserted classification(s) of the claim (e.g., secured, unsecured, priority, etc.) or interest, and (vi) any disposition of the claim or interest;

(i)     Implement necessary security measures to ensure the completeness and integrity of the Interests Register and the safekeeping of the original claims or interests;

(j)     Record all transfers of claims or interests and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

(k)     Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim or proofs of interest to the offices of ALCS, not less than weekly;

(l)     Upon completion of the docketing process for all claims or interests received to date for this case, turn over to the Clerk copies of the Interests Register for the Clerk's review (upon the Clerk's request);

(m)     Monitor the Court's docket for all notices of appearance, address changes, and claims- and interests-related pleadings and orders filed and make necessary notations on and/or changes to the interests register and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

(n)     Identify and correct any incomplete or incorrect addresses in any mailing or service lists;

(o)     Assist in the dissemination of information to the public and respond to requests for administrative information regarding this case as directed by the Debtors or the Court, including through the use of a case website and/or call center;

(p)     Monitor the Court's docket in this case and, when filings are made in error or containing errors, alert the filing party of such error and work with them to correct any such error;

(q)     If this case is converted to cases under chapter 7 of the Bankruptcy Code, contact the Clerk's office within three (3) days of the notice to ALCS of entry of the order converting this chapter 11 case;

(r)     Thirty (30) days prior to the close of this case, to the extent practicable, request that the Debtors submit to the Court a proposed order dismissing ALCS and terminating the services of such agent upon completion of its duties and responsibilities and upon the closing of this case;

(s)     Within seven (7) days of notice to ALCS of entry of an order closing this case, provide to the Court the final version of the Interests Register as of the date immediately before the close of this case; and

(t)     At the close of this case, if necessary, box and transport all original documents, in proper format, as provided by the Clerk's Office.

### Compensation

12.     The fees to be charged by ALCS in connection with services to be provided to the Debtors in connection with these chapter 11 cases are set forth in the Services Agreement. ALCS will be compensated in the ordinary course of business based on the services it provides at the rates set forth in the Services Agreement, without the need for ALCS to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.  The Debtors will provide ALCS with an advance deposit retainer in the amount of $20,000.  If the advance deposit retainer is applied against an invoice in accordance with the Services Agreement, then the Debtors will replenish the retainer as provided in the Services Agreement.

13.     Based on all engagement proposals obtained and reviewed, the Debtors submit that ALCS's rates are competitive and reasonable given ALCS's quality of services and expertise.

14.     The Debtors request that the fees and expenses incurred by ALCS in the performance of the above services be treated as an administrative expense of the Debtors; chapter 11 estates and be paid in the ordinary course of business.  If any dispute arises between ALCS and the Debtors with respect to fees and expenses, such dispute shall be presented to the Court for resolution thereof.

15.     The Debtors respectfully submit that the rates to be charged by ALCS for its services in connection with the Claims, Noticing and Balloting Agent are competitive and comparable to the rates charged by ALCS's competitors for similar services.

16.     The Debtors also respectfully submit that, as an administrative agent and an adjunct to the Court, ALCS is not a "professional person" whose retention is subject to approval under section 327 of the Bankruptcy Code or whose compensation is subject to approval of the Court under sections 330 and 331 of the Bankruptcy Code.

**Disinterestedness**

17.     Although the Debtors do not propose to retain ALCS under section 327 of the Bankruptcy Code, the Pirrung Declaration represents that ALCS does not, by reason of any direct or indirect relationship to, connection with or interest in the Debtors, hold or represent any interest adverse to the Debtors, their estates or any class of creditors or equity interest holders with respect to the matters upon which it is to be engaged.  Based upon the Pirrung Declaration, ALCS is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

18.    As set forth in the Pirrung Declaration, ALCS represents, among other things, that:

(a)    ALCS is not a creditor of the Debtors as of the Petition Date.

(b)    It will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as Claims, Noticing and Balloting Agent;

(b)    By accepting employment in this bankruptcy case, ALCS waives any right to receive compensation from the United States government, with respect to these cases;

(c)    In its capacity as Claims, Noticing and Balloting Agent, ALCS may be an agent of the United States Bankruptcy Court and may act on behalf of the United States Bankruptcy Court to the extent prescribed by the Bankruptcy Code; and

(d)    ALCS will not employ any past or present employees of the Debtors in connection with its work as Claims and Balloting Agent in these Chapter 11 cases.

## IV.    Basis for Relief Requested

19.    Bankruptcy Rule 2002 generally regulates what notices must be given to creditors and other parties in interest in bankruptcy cases.  Under Bankruptcy Rule 2002, the Court may direct that some person other than the Clerk of the Court give notice of the various matters described below.  *See* Fed. R. Bankr. P. 2002.

20.    Furthermore, section 156(c) of title 28 of the United States Code, which governs the staffing and expenses of a bankruptcy court, authorizes the Court to use "facilities" or "services" other than the Clerk's Office for administration of bankruptcy cases.  It states:

Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States. The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

21.     Accordingly, Bankruptcy Rule 2002 and section 156(c) of title 28 of the United States Code empowers the Court to use outside agents and facilities for claims, noticing and balloting purposes, provided that the Debtors' estates pay such services' cost.

22.     Additionally, section 105(a) of the Bankruptcy Code provides this Court with the power to appoint ALCS as the Debtors Claims, Noticing and Balloting agent in these chapter 11 cases effective as of the Petition Date.  Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

23.     Although the Debtors have not yet filed their schedules of assets and liabilities, they anticipate that there will be several thousand entities to be noticed.  In view of the number of anticipated claimants and the complexity of the Debtors' businesses, the Debtors submit that the appointment of a claims, noticing and balloting agent is both necessary and in the best interests of both the Debtors' estates and their creditors.  The large number of creditors, equity holders and other parties-in-interest involved in the Debtors' chapter 11 cases would almost certainly impose heavy administrative and other burdens upon the Court and the Clerk's Office.  To relieve the Court and the Clerk's Office of these burdens, the Debtors propose to engage ALCS as Claims, Noticing and Balloting Agent in their chapter 11 cases.

24.     The Debtors, therefore, believe that retaining ALCS as the Claims, Noticing and Balloting agent in the chapter 11 cases will promote economical and efficient administration of these cases, and is in the best interests of the Debtors, their estates and their creditors.

25.     After considering its quality of performance in other cases, and its proposed rates, the Debtors concluded that ALCS was the best choice for Claims, Balloting and Noticing agent.  By appointing ALCS as the Claims, Noticing and Balloting agent, the Debtors and all parties in

interest will benefit from ALCS's significant experience in acting as a Claims, Balloting and Noticing agent in other cases and the cost effective methods that ALCS has developed in its years of experience.

26.    Bankruptcy courts in Virginia have approved similar relief in other chapter 11 cases. *See, e.g.*, *IBCS Mining, Inc.*, Case No. 14-61215 (Bankr. W.D. Va. Aug. 25, 2014); *In re James River Coal Co.*, Case No. 14-31848 (KRH) (Bankr. E.D. Va. Apr. 10, 2014); *In re AMF Bowling Worldwide, Inc.*, No. 12-36495 (KRH) (Bankr. E.D. Va. Nov. 13, 2012); *In re Workflow Mgmt.*, No. 10-74617 (SCS) (Bankr. E.D. Va. Oct. 8, 2010); *In re Movie Gallery, Inc.*, No. 10-30696 (DOT) (Bankr. E.D. Va. Feb. 3, 2010); *In re Greenbrier Hotel Corp.*, No. 09-31703 (KRH) (Bankr. E.D. Va. Mar. 20, 2009); *In re S & K Famous Brands, Inc.*, No. 09-30805 (KRH) (Bankr. E.D. Va. Feb. 9, 2009); *In re Circuit City Stores, Inc.*, No. 08-35653 (KRH) (Bankr. E.D. Va. Nov. 10, 2008).

### V.    Notice

27.    The Debtors have provided copies of this Motion to (a) the Clerk's Office; (b) the U.S. Trustee; (c) the attorneys for an informal group of holders of the Debtors' prepetition secured notes and lenders under the Debtors' postpetition financing; (d) all known creditors holding secured claims against the Debtors' estates; (e) those creditors holding the 30 largest unsecured claims against the Debtors' estates on a consolidated basis; (f) the Internal Revenue Service; (g) the Canadian Revenue Agency; (h) the Securities and Exchange Commission; (i) the Ontario Securities Commission; and (j) the United States Environmental Protection Agency.

### VI.    No Previous Request

28.    No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested

herein and such other and further relief as is just and proper.

DATED: April 6, 2015

Respectfully submitted,

_/s/ Henry P. (Toby) Long, III_____

Tyler P. Brown (VSB No. 28072)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No.77979)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone:  (804) 788-8200
Facsimile:    (804) 788-8218
Email: tpbrown@hunton.com
        hlong@hunton.com
        jpaget@hunton.com

*Proposed Counsel to the Debtors
and Debtors in Possession*

**SCHEDULE 1**
(Debtor Entities)

| | | | | |
|---|---|---|---|---|
| 1. | Xinergy Ltd. (3697) | 14. | Whitewater Contracting, LLC (7740) |
| 2. | Xinergy Corp. (3865) | 15. | Whitewater Resources, LLC  (9929) |
| 3. | Xinergy Finance (US), Inc. (5692) | 16. | Shenandoah Energy, LLC (6770) |
| 4. | Pinnacle Insurance Group LLC (6851) | 17. | High MAF, LLC (5418) |
| 5. | Xinergy of West Virginia, Inc. (2401) | 18. | Wise Loading Services, LLC (7154) |
| 6. | Xinergy Straight Creek, Inc. (0071) | 19. | Strata Fuels, LLC (1559) |
| 7. | Xinergy Sales, Inc. (8180) | 20. | True Energy, LLC (2894) |
| 8. | Xinergy Land, Inc. (8121) | 21. | Raven Crest Mining, LLC (0122) |
| 9. | Middle Fork Mining, Inc. (1593) | 22. | Brier Creek Coal Company, LLC (9999) |
| 10. | Big Run Mining, Inc. (1585) | 23. | Bull Creek Processing Company, LLC (0894) |
| 11. | Xinergy of Virginia, Inc. (8046) | 24. | Raven Crest Minerals, LLC (7746) |
| 12. | South Fork Coal Company, LLC  (3113) | 25. | Raven Crest Leasing, LLC (7844) |
| 13. | Sewell Mountain Coal Co., LLC (9737) | 26. | Raven Crest Contracting, LLC (7796) |

# Exhibit A

Proposed Order

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

|  |  |
|---|---|
| In re: | **Chapter 11** |
| **XINERGY LTD., *et al.*,** | **Case No. 15-[    ] (___)** |
|  | **(Joint Administration Requested)** |
| **Debtors.**[1] |  |

**ORDER AUTHORIZING THE APPOINTMENT OF AMERICAN LEGAL CLAIMS
SERVICES, LLC AS CLAIMS, NOTICING AND BALLOTING AGENT**

Upon consideration of the Motion[2] of the above-captioned debtors and debtors-in-possession for an order authorizing and approving the retention of American Legal Claims Services, LLC ("ALCS") by the Debtors and appointing ALCS as claims, noticing and balloting agent in these chapter 11 cases retroactive to the Petition Date, on terms and conditions set forth in the Services Agreement; the Court finds that (i) it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334(b), (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), (iii) the relief requested in the Motion is in the best interest of the

---

[1]     The Debtors, along with the last four digits of each Debtor's federal tax identification number, are listed on Schedule 1 attached to the Motion.

[2]     Capitalized terms not defined herein are given the meaning assigned to them in the Motion.

HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
Tyler P. Brown (VSB No. 28072)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)

*Proposed Counsel to the Debtors
and Debtors in Possession*

Debtors, their estates, and their creditors, (iv) proper and adequate notice of the Motion and the

opportunity for a hearing thereon has been given under the particular circumstances and that no

other or further notice is necessary, and (v) good and sufficient cause exists for granting of the

relief requested in the Motion as set forth herein.  Therefore,

IT IS HEREBY ORDERED THAT:

1.      The relief requested in the Motion is hereby GRANTED.

2.      The Debtors are authorized to retain ALCS effective as of the Petition Date under

the terms of the Services Agreement, and ALCS is appointed the Claims, Balloting and Noticing

agent.

3.      ALCS is appointed as agent for the Office of the Clerk of the Court (the "Clerk's

Office"), and as such, is designated as the authorized repository for all proofs of claim filed in

these chapter 11 cases and is authorized and directed to maintain official claims registers for

each of the Debtors and to provide the Clerk's office with a certified duplicate thereof upon the

request of the Clerk's Office.

4.      ALCS is authorized to take such other action to comply with all duties set forth in

the Motion.

5.      In addition to the services set forth in the Motion and the Services Agreement,

ALCS is authorized to provide such other claims processing, noticing, balloting and related

administrative services as may be requested from time to time by the Debtors.

6.      The Debtors are authorized to compensate ALCS in accordance with the terms of

the Services Agreement upon the receipt of reasonably detailed invoices setting forth the services

provided by ALCS and the rates charged for each, to reimburse ALCS for all reasonable and

necessary expenses it may incur, upon the presentation of appropriate documentation, and to

2

deposit with ALCS a retainer in the amount set forth in the Services Agreement, without the

need for ALCS to file fee applications or otherwise seek Court approval for the compensation of

its services and reimbursement of its expenses.

7.    The fees and expenses of ALCS under this Order shall be an administrative

expense of the Debtors' estates.

8.    In the event ALCS is unable to provide the services set out in this Order, ALCS

will immediately notify the Clerk and the Debtors' attorney and cause to have all original proofs

of claim and computer information turned over to another claims, noticing and balloting agent

with the advice and consent of the Clerk and the Debtors' attorney.

9.    ALCS shall not cease providing claims processing services during the chapter 11

case(s) for any reason, including nonpayment, without an order of the Court.

10.    If these cases convert to Chapter 7, ALCS will perform its duties through the

conversion process as required, provided however, that ALCS may be relieved of its duties

should there be insufficient funds in such Chapter 7 cases to enable the Chapter 7 trustee to pay

ALCS's fees and expenses.

11.    In the event of any inconsistency between the Services Agreement, the Motion

and this Order, this Order shall govern.

12.    Notice of the Motion as provided therein shall be deemed good and sufficient

notice of such application, and the requirements of Bankruptcy Rule 6004(a) and the local rules

of the Court are satisfied by such notice.

13.    Notwithstanding any Bankruptcy Rule (including, but not limited to, Bankruptcy

Rule 6004(h)) or Local Bankruptcy Rule that might otherwise delay the effectiveness of this

3

Order, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

14.    The Debtors and ALCS are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

15.    This Court shall retain jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.

Dated:_____, 2015

_____
UNITED STATES BANKRUPTCY JUDGE

Entered on Docket: _____

WE ASK FOR THIS:

/s/ Henry P. (Toby) Long, III
Tyler P. Brown, Esquire (VSB No. 28072)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
Tel:  (804) 788-8200
Fax:  (804) 788-8218

*Proposed Counsel to the Debtors
and Debtors in Possession*

# Exhibit B

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| XINERGY LTD., *et al.*, | Case No. 15-[    ] (___) |
| Debtors.[1] | (Joint Administration Requested) |

### DECLARATION OF JEFFREY PIRRUNG
### IN SUPPORT OF MOTION OF THE DEBTORS AND DEBTORS IN POSSESSION
### FOR ENTRY OF AN ORDER APPOINTING ALCS BANKRUPTCY SOLUTIONS, LLC
### AS CLAIMS, NOTICING AND BALLOTING AGENT

I, Jeffrey Pirrung, under penalty of perjury, declare as follows:

      1.     I am the Managing Director of ALCS Bankruptcy Solutions, LLC ("ALCS").  I

am over the age of 18 and competent to testify.  I am authorized to make this declaration (the

"Declaration") on behalf of ALCS.  Except as otherwise noted, I have personal knowledge of the

matters set forth herein.

---

[1]     The Debtors, along with the last four digits of each Debtor's federal tax identification number, are listed on Schedule 1 attached to the Motion.

HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
Tyler P. Brown (VSB No. 28072)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

2.      This Declaration is made in support of the *Motion of the Debtors and Debtors in Possession for Entry of an Order Appointing American Legal Claims Services, LLC as Claims, Noticing and Balloting Agent* (the "Motion"), which was filed by the above-captioned debtors and debtors in possession (the "Debtors") contemporaneously herewith.[2]

3.      As agent and custodian of the Court records pursuant to 28 U.S.C. § 156(c), ALCS will perform, at the request of the Office of the Clerk of the Court (the "Clerk's Office"), the notice, claims and balloting related services specified in the Motion and the Services Agreement.  In addition, at the Debtors' request, ALCS will perform such other noticing, claims, administrative, technical and support services specified in the Motion and the Services Agreement.

4.      ALCS is a data processing firm that specializes in chapter 11 administration, consulting, and analysis, including noticing, claims processing and other administrative tasks in Chapter 11 Cases.  ALCS has assisted and advised numerous chapter 11 debtors in connection with noticing and claims administration.  ALCS has provided identical or substantially similar services in other chapter 11 cases nationwide, including before this Court.

5.      The services ALCS proposes to render as Claims, Noticing and Balloting agent are described in the Motion and set forth in the Services Agreement, which is attached as Exhibit C to the Motion.

6.      Subject to the Court's approval, in performing the services of Claims, Noticing and Balloting Agent, ALCS will charge the Debtors the rates set forth in the Services Agreement.  The Debtors propose to provide to ALCS a $20,000.00 retainer (the "Retainer") to be held under the Services Agreement during the Chapter 11 Cases as security for the payment of

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

2

fees and expenses incurred in rendering the services described hereunder in the Chapter 11

Cases, with any remainder to be held as security for the payment of other approved fees and

expenses incurred in rendering other services under the Services Agreement.

      7.     ALCS represents, among other things, that:

     (a)     ALCS is not a creditor of the Debtors as of the Petition Date.

     (b)     It will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as Claims, Noticing and Balloting Agent;

     (c)     By accepting employment in this bankruptcy case, ALCS waives any right to receive compensation from the United States government, with respect to these cases;

     (d)     In its capacity as Claims, Noticing and Balloting Agent, ALCS may be an agent of the United States Bankruptcy Court and may act on behalf of the United States Bankruptcy Court to the extent prescribed by the Bankruptcy Code; and

     (e)     ALCS will not employ any past or present employees of the Debtors in connection with its work as Claims and Balloting Agent in these Chapter 11 cases.

      8.     Although, pursuant to the Motion, the Debtors do not propose to retain ALCS

under section 327 of the Bankruptcy Code, to the best of my knowledge, neither ALCS, nor any

employee thereof, has any materially adverse connection to the Debtors, their creditors or other

relevant parties. ALCS may have relationships with certain of the Debtors' creditors as vendors

or in connection with cases in which ALCS serves or has served in a neutral capacity as the

claims, noticing and balloting agent for another chapter 11 debtor. Such relationships are, to the

best of my knowledge, completely unrelated to these chapter 11 cases.

      9.     In addition, ALCS personnel may have relationships with some of the Debtors'

creditors or other parties in interest. However, to the best of my knowledge, such relationships,

to the extent they exist, are of a personal nature and completely unrelated to these chapter 11 cases. ALCS has and will continue to represent clients in matters unrelated to these chapter 11 cases.

10.     ALCS also has had and will continue to have relationships in the ordinary course of its business with certain vendors, professionals and other parties in interest that may be involved in the Debtors' cases in matters unrelated to these cases. ALCS may also provide professional services to entities or persons that may be creditors or parties in interest in these chapter 11 cases, which services do not directly relate to, or have any direct connection with, these chapter 11 cases or the Debtors.

11.     Should ALCS discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, ALCS will use reasonable efforts to file promptly a supplemental declaration.

12.     Accordingly, to the best of my knowledge, neither ALCS, nor any employees thereof, represents any interest materially adverse to the Debtors' estates with respect to any matter upon which ALCS is to be engaged. Based on the foregoing, I believe that ALCS is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

13.     ALCS will comply with all requests of the Clerk's Office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

4

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Dated: _____April 6,_____ , 2015

Jeffrey Pirrung
Managing Director
American Legal Services, LLC

# Exhibit C

# SERVICES AGREEMENT

This Services Agreement is entered into this 3rd day of April, 2015, (the "Effective Date") between American Legal Claim Services, LLC, a Florida limited liability company, P.O Box 23650, Jacksonville, FL  32241, hereinafter referred to as ("ALCS"), and Xinergy Ltd. (including its controlled affiliates, successors and assigns, hereinafter referred to as ("Client")). ALCS shall mean ALCS, its servants, agents, employees, licensees,  subsidiaries, affiliates and subcontractors of ALCS. "Agreement" shall mean this  agreement in its entirety.

In consideration of the mutual promises contained in this Agreement, Client and ALCS agree as follows:

## I.    SERVICES

ALCS agrees to provide the services set forth in the "Statement of Work" attached hereto as Exhibit A or any additional services requested by Client. The services to be rendered by ALCS shall commence on the date hereof and continue until either party exercises its rights of suspension or termination as set forth below:

## II. ACCESS TO ALCS DATABASE SYSTEM

### A. Rights of Ownership
The parties understand that the software programs and other materials (including the name "ALCS") furnished by ALCS pursuant to the Agreement and/or developed during the course of this Agreement by ALCS are the sole property of ALCS. The term "programs" shall include, without limitation, data processing programs, check printing programs, specifications, applications, routines, sub-routines, procedural manuals and documentation. Client further agrees that any ideas, concepts, know-how or techniques relating to the claims management software or ALCS's performance of its services developed during the course of this Agreement by ALCS shall not be treated as "work made for hire" and shall be the exclusive property of ALCS.

### B. Non-Exclusive License
Pursuant to the terms and conditions of this Agreement, ALCS grants to Client a personal, non-exclusive, non-transferable license to use the Web Client Access version of ALCS's claims management software for access to the claims database. Client's license to use the ALCS software is limited to employees and/or contractors of Client under Client's authorization and control and Client's professional advisors.  Client's use of the ALCS software is limited solely to   Client's own internal business use with respect to the current data which is the subject of  the engagement.

Each authorized user shall access the ALCS software using a logon identifier and password. Client and each Authorized User shall be responsible for maintaining and protecting the user logon identifier and password. Client shall be solely responsible for

informing ALCS in writing that a terminated Authorized User's access to the ALCS software is terminated.

## III. CONFIDENTIALITY

In order for ALCS to effectively provide services to the Client, it is necessary and desirable for the Client to disclose to ALCS confidential information relating to the Client's past, present or future business. Since it is difficult to separate confidential information from that which is not, ALCS agrees to regard all information gained as a result of services hereunder as confidential; provided, however, if any such information is publicly available, was already in ALCS's possession or known to it, or was rightfully acquired by ALCS from a third party, ALCS shall have no liability for any disclosure of such information.

ALCS further agrees to safeguard the Client's confidential information in a prudent business manner. Except as required in the performance of its duties under the Statement of Work attached hereto as Exhibit A, ALCS agrees to keep confidential and not to disclose to any ALCS employee or employees or any third party, without the express written authorization of Client, the confidential information received from Client. ALCS agrees not to use the information received from Client for ALCS's own business or commercial purposes.

However, Client hereby agrees that ALCS shall not be liable beyond the limits provided in Section VII herein for damages or losses of any nature whatsoever arising out of the disclosure or use of any material supplied by Client to ALCS in the performance of this Agreement.

## IV. PRICES, CHARGES AND PAYMENT

ALCS agrees to charge and Client agrees to pay ALCS for its services at the rates or prices as set forth in the "Pricing" attached hereto as Exhibit B. ALCS will bill Client in tenth-hour increments for charges based on hourly rates.

Client agrees, subject to court approval, to provide ALCS with an advance deposit retainer of $20,000 after the bankruptcy filing, which ALCS will hold as security for the payment of fees and expenses incurred in rendering the ALCS Services hereunder. In the event the Client doesn't comply with the 30 day payment terms outlined herein, ALCS will apply the deposit retainer to invoices that have been submitted to the Client and are outside of the 30 day payment terms. If the deposit retainer is applied against an invoice then the Client will replenish the retainer so that ALCS holds a deposit sum of $20,000 while this Agreement remains in force.

Client agrees to pay ALCS for any reasonably incurred out-of-pocket expenses for long distance charges, postage, supplies, transportation, lodging, meals and related items. ALCS may, at its discretion, pre-bill for anticipated out-of-pocket expenses.

ALCS agrees to submit its invoice to Client on a monthly basis. Client agrees that the amounts invoiced are due and payable thirty (30) days after its receipt of the invoice. If any payment is not made within such thirty (30) day period, interest will accrue, at the rate of 1.5% per month, on such past-due amount, commencing on the thirty-first (31st) day and continuing until the invoice is paid in full.

ALCS reserves the right to reasonably increase its prices, rates and charges annually on January 2nd following the second anniversary of this Agreement; provided, however, that any such increase is limited to 5%.

In addition to all charges for services and materials hereunder, Client shall pay to ALCS all taxes levied, however designated, that are applicable to the Agreement or are measured directly by payments made under it and are required to be collected by ALCS or paid by ALCS to tax authorities. This provision includes, but is not limited to, sales, use and excise taxes, but does not include personal property taxes or taxes based on net income.

In addition to all other charges for services and materials hereunder, Client shall pay to ALCS any actual charges relating to, arising out of or as a result of any Client error or omission. Such charges shall include, but are not limited to, supplies, re-runs, and any additional administrative, systems development, data processing, clerical, over-time, or other charges billed at the then prevailing ALCS standard rates.

Furthermore, ALCS can pre-bill the Client for anticipated costs of out of pocket costs such as notice publication, printing, etc.

## V.  WARRANTIES AND LIABILITIES

Accuracy and adequacy of Client's information are the responsibility of Client. ALCS shall have no liability to Client for any act or inaction with respect to Client's written directions or in accordance with the terms of this Agreement, except for ALCS's willful misconduct or gross negligence ("Willful Misconduct-Gross Negligence Cause"). ALCS shall have no implied duties or obligations and shall not be charged with knowledge or notice of any fact or circumstance not specifically set forth in this Agreement, a written direction or similar written notice, or order of the court. ALCS may rely upon any instrument, not only as to its due execution, validity and effectiveness, but also as to the truth and accuracy of any information contained therein which ALCS shall in good faith believe to be genuine, which is in the form of a written direction, similar written notice or order of the court.

ALCS shall not be liable for non-performance or delay of performance hereunder should such non-performance or delay arise out of causes beyond its reasonable control. Such causes may include, but are not limited to, acts of God or a public enemy, fire, electrical failure, strike, lockout, governmental order or regulation or any other cause, whether similar or dissimilar. For purposes of this Section V, "willful misconduct" shall mean an act by ALCS, done, or omitted to be done, not in good faith and without reasonable belief that its action or inaction was in the best interest of the Client.

## VI. SUSPENSION OF SERVICE AND TERMINATION

This Agreement shall remain in force until such time as ALCS has fulfilled all of its duties under this Agreement, or upon express written notice from the Client, which notice shall be effective on receipt. Client's obligation to pay all charges which shall accrue up to and including said notification date shall survive any termination hereof. Within thirty (30) days after termination of this Agreement, ALCS shall deliver to Client copies of all requested records and reports (other than ALCS's confidential records and reports) concerning this Agreement.

If Client is in default under any term hereof and such default is not cured within thirty (30) days after ALCS notifies Client in writing of such default, then ALCS may terminate this Agreement. Client's obligation to pay all charges which shall accrue up to and including said termination shall survive any termination hereof.

Upon termination of this Agreement for any reason whatsoever,  Client data files in the possession of ALCS shall, at the request of the Client, be returned to Client in the form of a diskette or other acceptable magnetic media; provided, however, that all amounts due and payable by Client pursuant to this Agreement shall be paid prior to such return.

ALCS shall store all returned mail, claims, correspondence and other case documents (collectively "Case Documents") until the last day of the month in which the services set forth herein have been completed and billing to the Client is no longer required. Prior to the cessation of services ALCS shall notify Client of the following options:

(1) ALCS shall continue to store Case Documents at a monthly storage fee as set forth in ALCS's then current storage rates, payable in advance on a monthly basis. In the event Client does not pay ALCS the monthly storage fee for more than 2 consecutive months, ALCS shall have the right to destroy Case Documents without further liability.

(2) ALCS shall ship all Case Documents to Client, or its designee, at such address as directed by Client. All shipping costs and expenses incurred are to be paid by Client.

(3) Upon direction by Client, ALCS shall arrange to destroy all Case Documents. All costs and expenses incurred for destruction of documents are to be paid by Client.

## VII. INDEMNIFICATION

With respect to performance of ALCS's duties pursuant to this Agreement, written directions or similar written notice, or order of the Court, Client shall, to the fullest extent permitted by law and to the extent provided herein, indemnify and hold harmless ALCS and each of its officers, directors, employees, attorneys, agents and affiliates (collectively referred to in this Agreement as the "Indemnified Party" or "Indemnified Parties" against any and all claims (whether or not valid), demands, suits, actions, proceedings (including any inquiry or investigation), losses, damages liabilities, costs, and expenses of any kind or nature whatsoever (including, without limitation, reasonable attorneys' fees) incurred by or asserted against any of the Indemnified Parties from and after the date of the

Client Initial_____                                 4

Agreement, by any person, whether direct, indirect, or consequential, whether threatened or initiated, as a result of or arising from or in any way relating to the negotiation, preparation, execution, performance or failure of performance of the Agreement or any transactions contemplated herein, whether or not any such Indemnified Party is a party to any such suit, action, or proceeding, or the target of any such inquiry or investigation; provided, however, that the Indemnified Party shall not have the right to be indemnified hereunder for any liability finally determined by a court of competent jurisdiction, subject to no further appeal, to have resulted solely from the gross negligence or willful misconduct ("Gross Negligence-Willful Misconduct Clause") of such Indemnified Party. If any such action or claim shall be brought against any Indemnified Party, such Indemnified Party may, in its sole discretion, retain separate counsel (who may be selected by such Indemnified Party in its sole discretion) in any such action and to participate in the defense thereof. Client shall be liable to pay the reasonable fees and expenses of counsel retained by the Indemnified Party pursuant to the preceding sentence, subject to the foregoing Gross Negligence-Willful Misconduct Clause.  All such fees and expense payable by Client pursuant to the foregoing sentence shall be paid from time to time as incurred, both in advance of and after the final disposition of such claim or action. The obligations of Client under this Section VII shall survive any termination of this Agreement and the resignation or removal of ALCS. For purposes of this Section VII, "willful misconduct" shall mean an act by either Party, done, or omitted to be done, not in good faith and without reasonable belief that its action or inaction was in the best interest of the other Party.

## VIII. NOTICES

Written notice to a party to this Agreement shall be deemed to have been given on the date of delivery when deposited in U.S. Mail, postage prepaid or sent by overnight courier service and addressed as follows:

| If to ALCS: | If to Client: |
|---|---|
| **ATTN: Jeffrey Pirrung** | **ATTN: Michael R. Castle** |
| **American Legal Claim Services, LLC** | **Xinergy Ltd.** |
| **P.O. Box 23560** | **8351 East Walker Springs Lane** |
| **Jacksonville, FL  32241** | **Knoxville, TN 37923** |

## IX. GOVERNING LAW; VENUE; ATTORNEYS' FEES.

This Agreement shall be construed in accordance with the laws of the State of Florida without respect to its principles of conflicts of laws.  The exclusive venue for any action or proceeding arising under or relating to this Agreement shall be Duval County, Florida. In the event there is any action or proceeding to enforce the terms of this Agreement, the prevailing party, in addition to any other remedy, shall be entitled to recover reasonable attorney's fees and paralegal fees and all other costs associated with any such action or proceeding, at all trial and appellate levels.

## X. SEVERABILITY

To the extent any provision of this Agreement is prohibited by (or deemed invalid under) applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

## XI. ENTIRE AGREEMENT

This Agreement constitutes the entire Agreement between the parties with respect to the services to be provided hereunder and incorporates all undertakings and representations relied upon in reaching such Agreement.  This Agreement shall not be modified, amended, abridged, or otherwise varied except by written instrument duly executed by an authorized representative of Client and an officer of ALCS.

## XII. WAIVER

No failure or delay on the part of either party in exercising any right or remedy with respect to a breach of this Agreement by the other party shall operate as a waiver thereof or of any prior or subsequent breach of this Agreement by the breaching party, nor shall the exercise of any such right or remedy preclude any other or future exercise thereof or exercise of any other right or remedy in connection with this Agreement. Any waiver must be in writing and signed by the waiving party.

## XIII. COUNTERPARTS

This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed to be an original instrument, but all such counterparts together shall constitute one and the same instrument.

## XIV. ASSIGNMENT

Neither party may assign this Agreement or any rights or duties under this Agreement without the prior written consent of the other. Any attempted assignment not in accordance with this Section XV shall be null and void.

## XV. BINDING EFFECT

This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective legal representatives, successors, and assigns.

## XVI. CONSTRUCTION

Unless the context of this Agreement otherwise clearly requires, references to the plural include the singular and the singular includes the plural.  Wherever the context so requires, the masculine shall refer to the feminine, the feminine shall refer to the masculine, the masculine or the feminine shall refer to the neuter, and the neuter shall refer to the masculine or the feminine.  The captions of the Agreement are for convenience and ease of reference only and in no way define, describe, extend, or limit the scope or intent of the Agreement or the intent of any of its provisions.  In the event of any conflict between this Agreement and any schedules or exhibits attached to this Agreement, the terms of this Agreement shall control.

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement effective as of the day and year first hereinabove written.

American Legal Claim Services, LLC          CLIENT:

By: Jeffrey L. Pirrung                                      By: Michael R. Castle

Title: Managing Director                              Title: Chief Financial Officer
Date:  4/6/2015                                           Date:

Exhibit A
Statement of Work

I.   **Provide certain noticing, claims processing and balloting** administration services, including, without limitation:

   a.  Prepare and serve required notices in this Chapter 11 case, Including:

       i.    Notice of commencement and the initial meeting of creditors under §341
       ii.   Notice of claims bar date
       iii.  Notices of objection to claims and objections to transfers of claims
       iv.  Notices of hearings
       v.    Notices of transfer of claims
       vi.   Documents related to sales
       vii.  Documents related to the Disclosure Statement of Plan of Reorganization if applicable
       viii. Notice of Effective Date if applicable
       ix.   Such other notices as the Debtors or Court may deem necessary or appropriate for an orderly administration of this bankruptcy case.

   b.  Within five days after mailing of a particular notice, file with the Court a proof of service including a service list with the names and addresses of each party served and the manner of service.

   c.  Receive, examine, and maintain copies of all proofs of claim and proofs of interest filed in this bankruptcy case.

   d.  Maintain the official register of claims and interests by docketing all claims and interests in a claims database which includes at least:

       i.    the name and address of the claimant or interest holder and any agent thereof if applicable;
       ii.   the date the proof of claim or interest was received by ALCS or the Court;
       iii.  the official number assigned to the proof of claim or interest;
       iv.  the asserted amount and classification of the claim.

   e.  Record all transfers of claim pursuant to Bankruptcy Rule 3001(e).
   f.  Revising the creditor matrix if necessary.
   g.  Record any order entered by the Court, which may affect a proof of claim or interest, in the claim register.
   h.  Monitor the Court's docket for any pleading related to a claim or interest and adjusting the claim register accordingly.
   i.  File a complete claim register with the Court on a quarterly basis or more regularly if requested by the Clerk's office.
   j.  Maintain an up-to-date mailing list of all creditors and all entities who have filed proofs of claim or proofs of interest and/or requests for notices in the case and providing such list to the Court or any other requesting party within 48 hours.
   k.  Provide access to the public for examination of claims and the claims register during the hours of 9:00 a.m. and 4:30 p.m. prevailing Eastern Time, Monday through Friday at no charge.
   l.  Create and maintain an informational website.

Exhibit A
Statement of Work

m.  Forward all claims, an updated claims register and an updated mailing list to the Court within 10 days of an entry of an order converting the case to chapter 7 or within 30 days of entry of a final decree.

n.  Implement necessary security measures to ensure the completeness and integrity of the claims register.

o.  Comply with applicable federal, state, municipal and local statutes, ordinances, rules, regulations, orders, and other requirements.

p.  Provide temporary employees to assist in any aspect of employment requirements.

q.  Promptly comply with such further conditions and requirements as the Clerk's Office or the Court may at any time prescribe.

r.  Provide such other claims processing, noticing, and administrative services as may be requested from time to time by the Debtors.

s.  Assist with plan solicitation and balloting.

t.  Assist the Debtor with preparation of SoFAs and Schedules.

u.  Provide assistance relating to disbursements under the Debtors' plan.

v.  Other administrative tasks that the Debtor may request.