IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **CHAPTER 11** |
| **XINERGY LTD.,** *et al.***,** | ) | |
| | ) | **Case No. 15-70444** |
| Debtors. | ) | |

| | | |
|---|---|---|
| **Pamela Myles,** | ) | |
| | ) | |
| Movant, | ) | |
| | ) | **Motion of Pamela Myles for Entry** |
| v. | ) | **of Order Lifting the Automatic** |
| | ) | **Stay of West Virginia Legal Action** |
| **Xinergy Ltd.,** | ) | **for Cause** |
| **Xinergy Corp.,** | ) | **(ECF No. 90)** |
| **Xinergy of West Virginia, Inc.,** | ) | |
| **South Fork Energy, LLC,** | ) | |
| **Shenandoah Energy, LLC,** | ) | |
| **Raven Crest Mining, LLC,** | ) | |
| **Raven Crest Minerals, LLC** | ) | |
| **Raven Crest Leasing, LLC, and** | ) | |
| **Raven Crest Contracting, LLC,** | ) | |
| | ) | |
| **Respondents.** | ) | |

| | | |
|---|---|---|
| **Janet K. Williams,** | ) | |
| | ) | |
| Movant, | ) | |
| | ) | **Motion of Janet K. Williams** |
| v. | ) | **for Entry of Order Lifting the** |
| | ) | **Automatic Stay of West Virginia** |
| **Xinergy Ltd.,** | ) | **Legal Action for Cause** |
| **Xinergy Corp.,** | ) | **(ECF No. 94)** |
| **Xinergy of West Virginia, Inc.,** | ) | |
| **South Fork Energy, LLC,** | ) | |
| **Shenandoah Energy, LLC,** | ) | |
| **Raven Crest Mining, LLC,** | ) | |
| **Raven Crest Minerals, LLC** | ) | |
| **Raven Crest Leasing, LLC, and** | ) | |
| **Raven Crest Contracting, LLC,** | ) | |
| | ) | |

**Respondents.**                              )

## MEMORANDUM OPINION

These matters come before the Court upon two separate Motions for Relief from Stay (the "Motions") filed by Pamela Myles ("Myles") and Janet K. Williams ("Williams") (collectively, the "Movants") for "cause" pursuant to 11 U.S.C. § 362(d)(1), the Objections to the Motions filed by Xinergy Ltd., *et al.*, the Supplemental Memoranda filed by the Movants, the Supplemental Brief filed by Xinergy Ltd., *et al.*, and the parties' respective Reply Briefs. For the reasons set forth below, both Motions will be granted in part.

FINDINGS OF FACT[1]

On April 6, 2015, Xinergy Ltd. and related entities (collectively, the "Debtors") filed voluntary petitions under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 *et seq*. The cases were procedurally consolidated and are being jointly administered by this Court. Each of the two Movants, Myles and Williams, initiated a lawsuit against certain Debtor entities[2] and other non-debtor defendants[3] in West Virginia state court, alleging sexual harassment under the West Virginia Human Rights Act, W. Va. Code § 5-11-1 *et seq*. No federal causes of action were asserted. Copies of the complaints in the state court actions were attached to the respective Motions for Relief filed by Myles and

---

[1] Where appropriate, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact. *See* Fed. R. Bankr. P. 7052, 9014(c).

[2] The Movants' state court complaints name Xinergy of West Virginia, Inc.; Raven Crest Mining, LLC; Raven Crest Leasing, LLC; Raven Crest Contracting, LLC; Raven Crest Minerals, LLC; and South Fork Coal Company, LLC as defendants. The Movants later amended their complaints to add Xinergy Corp. and Shenandoah Energy, LLC as party defendants. Myles re-filed her action, naming Xinergy Ltd. as a party defendant. Williams filed a Motion for Leave to File Second Amended Complaint to Add Xinergy Ltd. as Party Defendant in the state court, which remains pending (collectively, these entities are referred to as "Debtor Defendants").

[3] The Movants' state court complaints also name Jack Hagewood, Gregory Mason, Jack Easter, Les Hensley and Bobby E. Hypes, Jr. as defendants (collectively, the "Individual Defendants").

2

Williams. The factual allegations in the complaints are graphically descriptive, and need not be repeated here. In addition, each of the complaints requests damages "for mental anguish, emotional distress, humiliation, aggravation and inconvenience," as well as punitive damages and attorney's fees. Myles Mot. for Relief, Ex. 1 at 16; Williams Mot. for Relief, Ex. 1 at 14. The Debtor Defendants are each insured by (1) an Employment Edge Employment Practices Liability Insurance Policy, issued by AIG Insurance Company of Canada in the amount of three million U.S. dollars ($3,000,000.00) and (2) an Executive Edge Broad Form Management [Excess] Liability Insurance Policy issued by AIG Insurance Company of Canada in the amount of ten million U.S. dollars ($10,000,000.00) (collectively, the "Insurance Policies"). *See* Movants' Ex. 2.

On April 20, 2015, the Movants each filed a Motion for Relief with this Court, alleging "cause" to lift the stay under 11 U.S.C. § 362(d)(1), and on May 1, 2015 the Debtors filed an Objection to each of the Motions. The Movants each request that the Court enter an order lifting the automatic stay so that the West Virginia state court actions can proceed to allow the Movants to liquidate their claims against the Debtor Defendants, to seek recovery against available insurance coverage, and to file proofs of claim against the named debtors to the extent claims exceed available insurance coverage or to the extent insurance coverage does not exist. The Movants contend that there will be no great prejudice to the Debtors' estates or the Debtors, the hardship to the Movants outweighs any hardship to the Debtors, and Movants have a high probability of success on the merits of the complaints. The Debtors, in turn, opposed relief, contending that the Debtors must concentrate all of their efforts on the "immense task at hand," namely the

reorganization process, and "not on participating in burdensome litigation in a separate forum." Myles Objection at 2; Williams Objection at 2.

The Court held a preliminary hearing on the Motions and Objections thereto on May 5, 2015. The Court also issued deadlines for the filing of supplemental briefs and replies, and set these matters for a final hearing on May 27, 2015. The Court requested that the Movants elaborate on the legal basis supporting their collective contention that they should be allowed to liquidate their claims in another forum to proceed against available insurance coverage, while at the same time preserving their ability to file a claim against the Debtor Defendants' estates should available insurance coverage be insufficient to cover any damages that may be awarded. The Court further requested that the Debtor Defendants elaborate on how they propose the Movants' claims should be liquidated if the Court did not lift the stay to allow the pending litigation to continue.

The Movants filed their Supplemental Memoranda in support of their Motions on May 15, 2015. On the same date, the Debtors also filed a Supplemental Brief in support of their Objections. On May 22, 2015, the Movants and the Debtors each filed their respective reply briefs. On May 27, 2015, the Court held a final hearing on the Motions, at which time it received evidence on the Motions and the related Objections. After extensive argument by counsel, the Court took the pending matters under advisement.

## CONCLUSIONS OF LAW

This Court has jurisdiction of these matters by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on December 6, 1994, and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia. This Court further concludes that

these matters are "core" bankruptcy proceedings within the meaning of 28 U.S.C. § 157(b)(2)(G).

Once a debtor files a bankruptcy petition, the automatic stay of 11 U.S.C. § 362(a) stays legal most legal proceedings against the debtor. *See* 11 U.S.C. § 362(a). Nevertheless, the Bankruptcy Code also grants discretion to the bankruptcy courts to lift the stay "for cause." *See* 11 U.S.C. § 362(d)(1). The Bankruptcy Code does not define what constitutes "cause," so "courts must determine when discretionary relief is appropriate on a case-by-case basis." *See, e.g.*, *Robbins v. Robbins (In re Robbins)*, 964 F.2d 342, 345 (4th Cir. 1992) (citations omitted). "[A] desire to permit an action to proceed to completion in another tribunal may provide . . . cause." *See In re 210 W. Liberty Holdings, LLC*, 400 B.R. 510, 514 (Bankr. N.D.W. Va. 2009) (quoting H.R. Rep. No. 95-595, at 343 (1977)). Deciding whether to lift the stay is within the discretion of the bankruptcy court. *In re Robbins*, 964 F.2d at 345 (citing *In re Boomgarden*, 780 F.2d 657, 660 (7th Cir. 1985)); *In re Joyner*, 416 B.R. 190, 191 (Bankr. M.D.N.C. 2009).

In determining whether to grant relief from the automatic stay, courts "must balance potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied." *In re Robbins*, 964 F.2d at 345 (citing *Peterson v. Cundy (In re Peterson)*, 116 B.R. 247, 249 (D. Colo. 1990)). Various courts have enumerated different factors to consider in determining whether to lift the automatic stay to allow a creditor to continue pending litigation in a different forum. *See, e.g.*, *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990); *In re Johnson*, 115

B.R. 634, 636 (Bankr. D. Minn. 1989); *In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984).  The factors to be considered in the Fourth Circuit are:

> (1) whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary; (2) whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court; and (3) whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court.

*In re Robbins*, 964 F.2d at 345; *see also In re Joyner*, 416 B.R. at 191-92.  "While Congress intended the automatic stay to have broad application, the legislative history to [S]ection 362 clearly indicates Congress' recognition that the stay should be lifted in appropriate circumstances."  *In re Robbins*, 964 F.2d at 345.

The initial burden rests on the Movants to establish a *prima facie* case to show that "cause" exists in the first instance.  *Unnamed Citizens A Thru E and Certain Minor Children v. White (In re White)*, 410 B.R. 195, 201 (Bankr. W.D. Va. 2008).  Once the Movants meet their burden of establishing a *prima facie* case, the burden shifts to the Debtors to show that "cause" does not exist to lift the stay.  *Id.* (explaining that the movants have the "initial burden of demonstrating an appropriate basis for relief," but "[o]nce that has been accomplished . . . the ultimate burden of proof rests upon the Debtor to show a lack of cause to grant the . . . Motion for Relief").[4]

This Court finds that the first *Robbins* factor, "whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary," supports lifting the stay.  *See In re Robbins*, 964 F.2d at 345.  Applying the first *Robbins*

---

[4] Under 11 U.S.C. § 362(g), "while the party seeking relief from the stay has the initial burden of production or going forward with the evidence to establish a prima facie case for relief, the burden of proof, i.e., the burden of persuasion, rests on the party opposing relief on all issues except the existence of equity." *In re Joyner*, 416 B.R. at 192 n.1 (citations omitted).

factor, it is clear that the pending state court litigation involves issues of state law; specifically, the state court action involves claims of sexual harassment under the West Virginia Human Rights Act, a matter within the particular expertise of West Virginia courts.[5] Such a cause of action does not involve any issues of bankruptcy law, and therefore, does not require the expertise of this Court. Where there are no issues in any claims that require bankruptcy expertise, this factor weighs in favor of the party seeking relief. *In re Joyner,* 416 B.R. at 192; *see also In re White*, 410 B.R. at 201; *In re Thomas*, 211 B.R. 838, 841-43 (Bankr. D.S.C. 1997).

The second *Robbins* factor, "whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court," also supports lifting the stay in this case. *See In re Robbins*, 964 F.2d at 345. When a movant is seeking relief to continue pending litigation, "the burden on the debtor and the estate [is] much less" if relief is granted because "both the individual seeking relief and the debtor have already poured resources in prosecuting and defending against the underlying claims. In other words, both parties have already 'invested' heavily into the outcome of the litigation." *In re White*, 410 B.R. at 202. Williams commenced her lawsuit in the Circuit Court of Boone County, West Virginia on October 29, 2014, and a trial date of December 15, 2015 has been set in that case. Myles commenced her lawsuit in the Circuit Court of Boone County, West Virginia on October 29, 2014, but dismissed her action with leave of court and re-filed it in the Circuit Court of Kanawha County, West

---

[5] "To establish a claim for sexual harassment under the West Virginia Human Rights Act . . . based upon a hostile or abusive work environment a plaintiff-employee must prove that: (1) the subject conduct was unwelcome; (2) it was based on the sex of the plaintiff; (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and create an abusive work environment; and (4) it was imputable on some factual basis to the employer." *Penn v. Citizens Telecom Servs. Co.*, 999 F. Supp. 2d 888, 902 (S.D.W. Va. 2014) (citations omitted).

Virginia on March 30, 2015. A trial date has not yet been set in the Myles case. Counsel for the Movants represented to the Court that discovery is substantially complete in both cases. Further, several depositions have already been taken, and any remaining depositions are expected to be minimal as they need only be completed once for the benefit of both of the Movants' cases.

In addition, since the state court litigation involves both Debtor Defendants as well as Individual Defendants, who are not debtors in this case, not lifting the automatic stay would risk fragmented litigation and could potentially divest the Movants of an opportunity to litigate their claims. *See In re Bock Laundry Mach. Co.*, 37 B.R. 564, 566 (Bankr. N.D. Ohio 1984) ("A number of Courts have attributed a considerable weight to the fact that a plaintiff, by having to wait, may effectively be denied an opportunity to litigate. The aging of evidence, loss of witnesses, and crowded court dockets are factors which contribute to these hardships."). "The mere filing of a petition in bankruptcy cannot, in and of itself, erase a plaintiff's claim, their opportunity to litigate, or the fact that a debtor may be liable to the plaintiff in some amount." *Id.* at 567. Accordingly, lifting the automatic stay will foster judicial economy by allowing the adjudication of liability and the liquidation of claims to occur among all defendants in a single forum.

Moreover, based upon the review of the state court complaints, this Court finds that the sexual harassment claims brought by the Movants in their state court lawsuits are "personal injury tort" claims, within the scope of 28 U.S.C. § 157(b)(2)(B) and (O). *See, e.g.*, *In re White*, 410 B.R. at 203 (adopting the interpretation that personal injury tort claims "can involve invasions of personal rights" and declining to "limit[] that phrase to include only claims which allege actual physical injury"); *see also In re Mason*, 514 B.R.

8

852, 857-58 (Bankr. E.D. Ky. 2014) (finding that sexual harassment claims are "personal injury tort" claims). Therefore, pursuant to 28 U.S.C. § 157(b)(5), this Court does not have jurisdiction to liquidate or estimate these claims for purposes of distribution, and accordingly, if the stay were not lifted, these claims would still have to be liquidated in another court. *See, e.g.*, *Pieklik v. Hudgins (In re Hudgins)*, 102 B.R. 495, 498 (Bankr. E.D. Va. 1989) ("Ultimately, the issue must be tried or settled, and it is the prerogative of this Court . . . to allow the matter to proceed."). The filing of a proof of claim would not change this result. *In re Mason,* 514 B.R. at 860; *Thomas v. Adams (In re Gary Brew Enters., Ltd.)*, 198 B.R. 616, 620 (Bankr. S.D. Cal. 1996).

Finally, the third *Robbins* factor, "whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court," also weighs in favor of lifting the stay. *See In re Robbins*, 964 F.2d at 345. The purpose of the third factor is:

> [T]o protect the estate from incurring unnecessary litigation expenses, to protect property of the estate from actions taken in other courts, to prevent the estate from being divested of property of the estate, and to assure that estate assets are used to pay creditors of the estate in accordance with the order of priorities established by Congress.

*Secrest v. Secrest (In re Secrest)*, 453 B.R. 623, 629 (Bankr. E.D. Va. 2011); *see also, In re Joyner,* 416 B.R. at 193 ("[A]ny judgment against the Debtor obtained in the State Court Action may not be enforced against the Debtor or property of the bankruptcy estate unless and until further relief from the automatic stay has been granted by the bankruptcy court.").

It is undisputed that the Debtor Defendants are being defended pursuant to the Insurance Policies, and that the insurer has retained West Virginia defense counsel. The

9

Debtor Defendant's insurance carrier assumed responsibility for the costs of defending the litigation, so there is no significant burden on the Debtor Defendants or the estate in lifting the stay and allowing the litigation to proceed. *See In re Bock Laundry Mach. Co*, 37 B.R. at 567-68. The Debtor Defendants assert that a judgment in excess of the Insurance Policies will be borne by the Debtors' estate and jeopardize any attempt to reorganize. The Movants counter, however, by asserting that they have not limited their demands to available insurance coverage, principally due to the insurers having issued "Reservation of Rights" letters to the insureds with respect to the underlying litigation, which letters have yet to be produced to the Movants. Without confidence that there is, in fact, insurance coverage to pay the pending claims if successful, Movants' reluctance at this stage to confine any recovery to insurance proceeds that may or may not be available is not unreasonable.

Further, in the event that the available Insurance Policies are insufficient to cover the judgment, the Movants ask the Court that they be allowed to file a proof of claim within thirty (30) days of their final judgment, thereby subjecting the balance of their claim to the claims allowance process of the Bankruptcy Court. "The filing of a petition in bankruptcy cannot, by itself, mitigate the amount that may be owing to a claimant. It can only affect how much will ultimately be paid to that claimant." *Id.* Accordingly, the third *Robbins* factor also supports granting relief from the automatic stay.[6] The Court is not persuaded, however, that it should create a separate proof of claim bar date for the Movants. Therefore, having concluded that all three of the *Robbins* factors support

---

[6] Having found that the *Robbins* factors weigh in favor of lifting the automatic stay, and accordingly, that the automatic stay should be lifted for cause, "the question of *where* the personal injury suit is to be heard is . . . beyond the scope of this Court's authority." *In re Hudgins*, 102 B.R. at 498 (explaining that lifting the stay does not "constitute a *de facto* adjudication of the question of the proper forum for trial of the underlying tort suit").

lifting the automatic stay for cause, this Court finds that the Movants have met their burden of production in establishing a *prima facie* case, and further concludes that the Debtors have not shown a lack of cause to lift the stay.

## CONCLUSION

For the foregoing reasons, the Court will grant the Motions for Relief filed by the Movants to allow the Movants to continue to prosecute their state court actions on the following conditions: (1) the Movants may proceed in the prosecution of their state court actions against the Debtor Defendants to engage in pre-trial discovery and other trial preparation proceedings, settlement negotiations, and with the trial of the case and appeal, if any, of the verdict; (2) the Movants may enforce any judgment obtained only to the extent of applicable insurance coverage of the Debtor Defendants in the cases; (3) relief from stay as granted above is available only for so long as a defense is provided to the Debtor Defendants by its insurance carriers; and (4) should the insurance carriers deny coverage and cease to defend the Movants' actions, or should any declaratory judgment action be initiated by any party to determine the extent of insurance coverage, the relief afforded herein shall be stayed.[7]  Further, if the Movants seek to participate in any distribution in the Debtor Defendants' estates, they shall abide by the proof of claim and interest bar dates established by the Court, and in the event any Movant's claims are liquidated or reduced by the pending litigation and/or insurance proceeds, such claims shall be amended accordingly.  Nothing contained herein shall prejudice the parties' rights, if any, under 28 U.S.C. § 157(b)(5), 28 U.S.C. § 1452, or Federal Rule of

---

[7] The Court may grant relief from the stay in a variety of different manners, "such as by terminating, annulling, modifying, or conditioning such stay."  11 U.S.C. § 362(d).

Bankruptcy Procedure 9027. An Order to such effect will be entered contemporaneously herewith.

Decided this 11th day of June, 2015.

_____
UNITED STATES BANKRUPTCY JUDGE

12