**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | **CHAPTER 11** |
| **XINERGY LTD.,** *et al.*, | ) | |
| | ) | **Case No. 15-70444** |
| **Debtors.** | ) | |

| | | |
|---|---|---|
| **XINERGY LTD.,** *et al.*, | ) | |
| | ) | |
| **Movants,** | ) | |
| | ) | **DEBTORS' SECOND OMNIBUS** |
| **v.** | ) | **OBJECTION TO CLAIMS** |
| | ) | **(Docket No. 496)** |
| **MERAL, INC.,** | ) | |
| | ) | |
| **Respondent.** | ) | |

| | | |
|---|---|---|
| **MERAL, INC.,** | ) | |
| | ) | |
| **Movant,** | ) | |
| | ) | **MOTION TO LIFT THE** |
| **v.** | ) | **AUTOMATIC STAY** |
| | ) | **(Docket No. 502)** |
| **XINERGY LTD.,** *et al.*, | ) | |
| | ) | |
| **Respondents.** | ) | |

## <u>MEMORANDUM OPINION</u>

This matter comes before the Court upon the Debtors' Second Omnibus Objection as to Certain Claims, with respect to Claim No. 1232 of Meral, Inc. (the "Claim Objection"), and the Motion to Lift the Automatic Stay filed by Meral, Inc. for "cause" pursuant to 11 U.S.C. § 362(d)(1) (the "Motion for Relief"), along with the responses thereto and the legal authorities and arguments submitted in support thereof. For the reasons set forth below, the Claim Objection is sustained with respect to Claim No. 1232,

and Claim No. 1232 shall be reclassified from a secured claim to an unsecured claim.

Further, Meral, Inc.'s Motion for Relief is denied.

## FINDINGS OF FACT[1]

On April 6, 2015, Xinergy Ltd. and related entities (collectively, the "Debtors")

filed voluntary petitions under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 *et*

*seq*.  The cases were procedurally consolidated and are being jointly administered by this

Court.

On November 6, 2015, the Debtors filed their Second Omnibus Objection to

Claims, which included an objection to Claim No. 1232 filed by Meral, Inc. ("Meral").

Debtors' Obj. to Claim ¶ 15, Ex. 1.  As noted in the Claim Objection, Claim No. 1232 is

filed by Meral as a secured claim in the amount of $671,812.14.[2]  The Claim Objection

recites that Meral asserts this amount is secured based on an Asset Purchase Agreement

between Meral and South Fork Coal Company, LLC ("South Fork")[3] dated January 31,

2011 (the "APA").  Debtors' Obj. to Claim ¶ 15.  On March 17, 2014, Meral and the

Debtors entered into an Amendment to the APA (the "Amendment").  *Id.*  Through the

APA, South Fork purchased certain property from Meral, including all of Meral's "rights,

---

[1] Where appropriate, findings of fact shall be construed as conclusions of law and conclusions of law shall
be construed as findings of fact.  *See* Fed. R. Bankr. P. 7052, 9014(c).
[2] Meral also filed Claim Nos. 1165 and 1226.  The Claim Objection notes that Claim No. 1232 supersedes
Claim Nos. 1165 and 1226.  By Order entered December 17, 2015, the Court sustained the Debtors'
Objection to Claim No. 1165 as being disallowed and expunged by agreement with Meral due to being
amended and superseded by subsequently filed Claim No. 1232.  The Debtors withdrew their objection to
Claim No. 1226 solely to the extent that the Claim Objection seeks to disallow and expunge the claim on
the basis that it has been amended and superseded, but the Debtors reserved all rights to object to Claim
No. 1226 on any other grounds.  *See* Order (I) Granting Debtors' Second Omnibus Objection as to Certain
Claims (Reclassification and/or Reduction of Alleged Administrative, Priority, and Secured Claims;
Amended and Superseded Claims; Equity Claims; Paid and Satisfied Claims), (II) Withdrawing the
Debtors' Second Omnibus Objection as to Certain Claims, and (III) Continuing the Debtors' Second
Omnibus Objection as to Certain Other Claims ¶¶ 1-2, 5, Ex. 1, Dec. 17, 2015.
[3] South Fork is one of the Debtors in the consolidated cases.  *See* Case No. 15-70442, Docket No. 5.

title and interest in and to any and all real property and other assets related thereto

(including, without limitation, the Leases, all mineral or surface property interests, and all

mining rights)." Joint Ex. A ¶ A. Specifically, under the APA, South Fork purchased

from Meral rights under a mining lease (the "WPP Coal Mining Lease") and "load-out"

facility lease (collectively, the "Leases"), as well as certain records, engineering and

environmental reports, and mining application permits (collectively, the "Other Assets").

*Id.* ¶ 1, Schedules 1(a) and 1(b). In addition, pursuant to the APA, South Fork assumed

and became responsible for "all liabilities and obligations of [Meral] under the Leases or

related to the [Other] Assets…." *Id.* ¶ 2(a).[4] The Debtors argue that neither the APA nor

the Amendment provide Meral with a security interest in any assets of the Debtors, and

thus, Meral's assertion of a secured claim is not supported. Debtors' Obj. to Claim ¶ 15.

The Debtors further argue that even if a security interest was created, it was not

perfected. *Id.*

---

[4] As consideration for the Sale of the Leases and the Other Assets by Meral, South Fork agreed to make the following payments: (a) $1,700,000.00 on the closing date, (b) $2,500,000.00 upon issuance of certain required permits from West Virginia for conducting mining operations on the property subject to the Leases (the "First Permitting Payment"), and (c) $1,000,000.00 on the date 18 months after First Permitting Payment (the "Second Permitting Payment"). In addition, South Fork agreed to pay Meral an overriding royalty payment equal to (a) $1.50 per ton for all coal sold by South Fork for less than or equal to a gross sales price of $150.00 per ton FOB mine or (b) $2.00 per ton, or one percent (1%) of the of the gross sales price FOB mine, whichever is greater, for all coal sold by South Fork for a gross sales price greater than $150.00 per ton FOB mine. The Amendment modified South Fork's obligation to make the Second Permitting Payment as follows: (a) $200,000.00 shall be paid on April 15, 2014, and (b) beginning on July 15, 2014, and continuing on the fifteenth (15th) day of each third month thereafter, South Fork shall make a payment of $50,000.00 with interest accruing at the rate of nine-and-a-half percent (9 ½%) per annum, until July 15, 2019, at which time all then unpaid interest and principal shall be due. Joint Ex. B ¶ 1. The Amendment further provides that the foregoing payment schedule would be modified in the event the amount of coal produced and sold from the property subject to the Leases averaged at least 40,000 tons per month for at least two calendar months at an average sales price of at least $105.00 per ton, and again at 50,000 tons per month for at least two calendar months at an average price of at least $105.00 per ton. Joint Ex. B ¶ 2(a). According to the Debtors, as of petition date, South Fork owed Meral $703,585.86 under the APA. Debtors' Obj. to Mot. for Relief ¶ 9.

On November 9, 2015, Meral filed its Motion for Relief, where Meral argued that it "assigned its interest in a leasehold agreement for the mineral rights of certain properties in Greenbrier County, WV," and that Meral "maintained a secured interest in said leasehold in the [APA]." Meral's Mot. for Relief, at 1. Meral requested that the Court lift the automatic stay of Section 362 to allow Meral to "reassume the lease and protect [its] interest in said leasehold." *Id.* On November 19, 2015, Meral filed its Response to the Claim Objection, arguing that the Court should deny the Claim Objection. Meral stated that it is the lessee of certain mineral and related rights from WPP LLC under a coal mining lease dated August 13, 2008 (the "WPP Coal Mining Lease"), and that a memorandum of this lease (the "Memorandum of Lease") is recorded in the Greenbrier County Clerk's Office in Greenbrier, West Virginia. Meral's Resp. to Claim Obj. ¶ 6. Meral also stated that it assigned those certain mineral and related rights to South Fork through the APA and later amended the payment terms through the Amendment. *Id.* ¶ 7. In addition, Meral cited the following excerpt from Section 3(a)(vii) of the APA, which Meral claimed granted it a security interest in the WPP Coal Mining Lease:

> Seller shall have the right to declare all of the rights of Purchaser in the Reserve Area created by this agreement and the Consent, Assignment and Assumption Agreements terminated and Seller shall be entitled to enter the premises of the Leases and to exclude Purchaser therefrom and to hold the same, together with all machinery, equipment, tools and other property therein and thereon which are free and clear of all liens and encumbrances, including permits (Purchaser agrees to transfer and assign all permits to Seller), so that Seller can immediately maintain operating the mines located on the premises of the Leases, if Seller so elects.

*Id.* ¶ 8 (quoting Joint Ex. A ¶ 3(a)(vii)). Meral also claimed that Section 3(a)(vii) of the APA "secures Meral[]'s interest in the reserve area and gives Meral [] the right to

reassume the leasehold if [South Fork] failed to make payments as required under the terms of the [APA]." *Id.* ¶ 9.

On November 27, 2015, the Debtors filed their Objection to the Motion for Relief, arguing that the Motion for Relief should be denied because Meral has not met its burden under Section 362 to show cause to lift the automatic stay.  Debtors' Obj. to Mot. for Relief ¶ 1.  The Debtors argued that Meral has not asserted any facts establishing that Meral holds a perfected security interest in any of the Debtors' assets.  *Id.* ¶ 2.  The Debtors also cited to Section 3(a)(vii) of the APA, including, *inter alia*, the following provision, listed in Section 3(a)(vii) below the language cited by Meral in its Motion for Relief: "<u>This Section 3(a)(vii) shall not be constructed as (i) a lien upon any of the real, personal or mixed property of [South Fork] or its affiliates or a security interest granted by [South Fork] therein</u> . . . ."  *Id.* ¶ 7 (quoting APA ¶ 3(a)(vii)) (emphasis added).  The Debtors argued that the automatic stay prohibits Meral from "exercising the equitable remedy to 'reassume'" from South Fork the rights under WPP Coal Mining Lease and a "load-out" facility lease (collectively, the "Leases") under the APA.  *Id.* at 2, 5-6.  The Debtors also argued that Meral has failed to establish "cause" because it does not have any interest in property of the Debtors.  *Id.* at 6-8.

On December 4, 2015, the Debtors filed their Reply to Meral's Response to the Claim Objection, arguing that the Court should sustain the Claim Objection because Meral failed to file a claim that is prima facie valid by not attaching supporting documentation.  Debtors' Reply to Meral's Resp. ¶ 9-10.  The Debtors further argued that the only evidence Meral produced, Section 3(a)(vii) of the APA, explicitly states that the

parties did not intend for Meral to have a secured claim, and Meral has not provided any evidence that any alleged security interest is perfected.  *Id.* ¶ 11-12.

On December 8, 2015, the Court held a preliminary hearing on the Claim Objection and Motion for Relief.  Joint Exhibits A through F, which were admitted into evidence, include the APA, the Amendment, the WPP Coal Mining Lease, the Memorandum of Lease, a property tax billing for 2013, and a tonnage and royalty report for 2015.  *See* Joint Exs. A-F.  Counsel for the Debtors again argued that Meral's claim is not entitled to prima facie validity as no supporting documentation reflecting a security interest was attached, and no such security interest exists to warrant secured status.  Counsel for Meral argued that, although the caption "Asset Purchase Agreement" is a "bad title" for the document, the APA was filed with Claim No. 1232 to support its claim of a security interest.  In addition, Meral argued that the APA is an executory contract under Section 363 of the Bankruptcy Code, and that Section 3(a)(vii) of the APA grants Meral a "right to reassume the Leases."  Meral further argued that the APA should, instead, be titled "Assignment of Lease," and that its collateral is the "right to re-enter the property."

The Debtors argued that, if the Debtors assumed the WPP Lease, but not the APA,[5] it would not have any future royalty obligations because, assuming the APA was rejected, rejection is a prepetition breach that would accelerate a claim for damages and that Meral would be entitled to file a Proof of Claim for those damages.  The Debtors

---

[5] As of the December 8, 2015 hearing, the Debtors had not yet assumed or rejected the APA or WPP Coal Mining Lease.  However, the confirmation hearing on the Debtors' Chapter 11 Plan took place on January 27, 2016.  In connection with that hearing, the Confirmation Order was entered, the APA was rejected, and the WPP Coal Mining Lease was assumed.  *See First Amended Joint Chapter 11 Plan of Xinergy Ltd. and Its Subsidiary Debtors and Debtors in Possession* dated October 14, 2015, at Article V, ¶ 5.1 (Docket No. 453); *Plan Supplement Relating to the Debtors' First Amended Chapter 11 Plan of Reorganization* dated January 13, 2016, Schedule D (Docket No. 628); *Findings of Fact and Conclusions of Law and Order Confirming the Debtors' Amended Joint Chapter 11 Plan* entered January 27, 2016 (Docket No. 678).

further argued that, if Meral had desired to be less risk averse, it could have provided for

a security interest in the collateral.  The Debtors further argued that Paragraph 8 of the

Consent, Assignment and Assumption Agreement dated January 31, 2011, by and

between Meral (Assignor), South Fork (Assignee), and WPP LLC (Lessor), entitled

"Consent and Release of Assignor by Lessor," is a complete release and would not be

included if the APA was a collateral assignment.  The Debtors also noted that, if they

decide to assume the APA, the Debtors would have to cure prepetition defaults plus post-

petition payments, including royalties.

The Court continued the hearing on the Claim Objection and Motion for Relief to

January 21, 2016, at 2:00 p.m., but reserved the right to rule on the matters after receiving

all briefs from the Debtors and Meral.  The Debtors filed their brief on December 18,

2015, Meral filed its brief on January 5, 2016, and the Debtors filed their reply brief on

January 13, 2016.  In addition, WPP LLC filed a response to the Motion for Relief on

January 13, 2016.[6]  After receiving all briefs, the Court took the pending matters under

advisement.[7]

## CONCLUSIONS OF LAW

This Court has jurisdiction of these matters by virtue of the provisions of 28

U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the

District Court on December 6, 1994, and Rule 3 of the Local Rules of the United States

District Court for the Western District of Virginia.  This Court further concludes that

---

[6] WPP LLC joins the assertions the Debtors have made that Meral has no valid, perfected security interest in any of the Debtors' property.

[7] The parties collectively requested that the Court delay ruling on the matters presently before it pending settlement negotiations, and the Court did so.  Those negotiations ultimately proved unsuccessful.

these matters are "core" bankruptcy proceedings within the meaning of 28 U.S.C. §

157(b)(2)(A), (B), (G), (K).

## I.        Claim Objection

Resolution of the Claim Objection is inherently intertwined with resolution of the

Motion for Relief.  Nevertheless, the Court will decide the Claim Objection at the outset.

Pursuant to the Section 502 of the Bankruptcy Code, a timely filed claim is deemed

allowed unless a party in interest objects.  11 U.S.C. § 502(a).  Once a party objects, the

Court, after notice and a hearing, must determine the amount and validity of the claim.

11 U.S.C. § 502(b).  The Court then makes such a determination by following the

burden-shifting framework established by the Fourth Circuit in *Harford Sands*.  *See In re*

*Virginia Broadband, LLC*, 521 B.R. 539, 557 (Bankr. W.D. Va. 2014), *aff'd sub nom.*

*Virginia Broadband, LLC v. Manuel*, 538 B.R. 253 (W.D. Va. 2015) (citing *Stancill v.*

*Harford Sands, Inc. (In re Harford Sands, Inc.)*, 372 F.3d 637 (4th Cir. 2004)).

### A.        Meral is Not Entitled to Prima Facie Validity of Its Claim Because the Supporting Documentation to Its Proof of Claim Is Insufficient.

Under the *Harford Sands* framework, the claimant's proper filing of a proof of

claim, including the required supporting documentation, is prima facie evidence of the

claim's amount and validity.  *In re Hilton*, No. 12–61102, 2013 WL 6229100, at *4–5,

2013 Bankr. LEXIS 5058, at *13 (Bankr. W.D. Va. Dec. 2, 2013) (citing *Falwell v.*

*Roundup Funding LLC (In re Falwell)*, 434 B.R. 779, 783 (Bankr. W.D. Va. 2009); Fed.

R. Bankr. P. 3001(c), (f)).  Except for claims based on open-end or revolving consumer

credit agreements, when a claim or interest in property of the debtor securing the claim is

based on a writing, a copy of the writing must be filed with the proof of claim.[8]  Fed. R.

Bankr. P. 3001(c)(1), (3).  If the claimant files a prima facie valid claim, the burden shifts

to the debtor (the objecting party) to "introduce evidence to rebut the claim's presumptive

validity."  *Harford Sands*, 372 F.3d at 640 (citing Fed. R. Bankr. P. 9017; Fed. R. Evid.

301; 4 *Collier on Bankruptcy* ¶ 501.02[3][d] (Alan N. Resnick & Henry J. Sommer eds.,

15th ed. rev. 2004)).  If the debtor satisfies this burden, the burden shifts back to the

claimant who "has the ultimate burden of proving the amount and validity of the claim by

a preponderance of the evidence."  *Id.* (citing 4 *Collier* ¶ 502.02[3][f]) (footnote omitted).

If the claimant cannot produce sufficient evidence to meet this burden, the claim fails,

and the court should sustain the objection.  *Hilton*, 2013 WL 6229100, at *5, 2013 Bankr.

LEXIS 5058, at *15.

  Here, although no party expressly submitted copies of Meral's proofs of claim

into evidence, the Court obtained copies from the Claim's agent, which was designated as

the authorized repository for all proofs of claim filed in these Chapter 11 cases by Order

entered April 9, 2015.  The appointment order provided that, upon request of the Clerk's

Office, certified duplicates would be provided to the Clerk.  Docket No. 70.  Meral timely

filed Proof of Claim Number 1232 on July 31, 2015,[9] and attached the Amendment as

supporting documentation as purported evidence of a secured claim in the amount of

$671,812.14.  The actual APA, although referenced in the Amendment, was not included

---

[8] Failure to provide documentation does not invalidate the proof of claim; it merely deprives the claim of prima facie validity.  *Hilton*, 2013 WL 6229100, at *5, 2013 Bankr. LEXIS 5058, at *13.
[9] The bar date for non-governmental claims in the consolidated cases was July 31, 2015.

as supporting documentation to the proof of claim.[10]  In *Falwell*, the Court addressed

what writings or supporting documents are necessary to support a valid prima facie claim.

> The documents . . . that are required to give a proof of claim prima facie
> validity are those that identify the claimant and the amount of the claim,
> and provide information sufficient to identify the basis for the claim (such
> as the account number).  A writing, if required, must support the existence
> and the amount of the claim and, if applicable, the priority or secured
> character of the claim.

434 B.R. at 785.

Although a lack of documentation required by Rule 3001, in and of itself, is not a

basis for disallowance of a claim in the Fourth Circuit, the claimant loses the prima facie

presumption of validity and amount.  *In re Andrews*, 394 B.R. 384, 389 (Bankr. E.D.N.C.

2008) (citing *In re Herron*, 381 B.R. 184, 190 (Bankr. D. Md. 2008); *In re Simms*, No.

06-1206, 2007 WL 4468682, at *2, 2007 Bankr. LEXIS 4134, at *5 (Bankr. N.D. W. Va.

2007)).  The claimant is then "left with the burden of proof on the validity and amount of

its claim at any further hearing."  *Simms*, 2007 WL 4468682, at *2, 2007 Bankr. LEXIS

4134, at *5 (citations omitted).  In the instant case, even though the parties stipulated the

documents filed as joint exhibits at the hearing, Meral's claim did not comply with Rule

3001(c)(1) at the outset, and thus, Meral's claim is not entitled to prima facie validity

under 3001(f).  The Amendment is not sufficient as prima facie evidence of the claim's

validity because the alleged security interest cannot be evaluated without reviewing the

APA itself, which was not attached to the proof of claim.  Therefore, no presumption of

---

[10] Meral filed three claims: Claim Nos. 1165, 1226, and 1232.  Meral included the Amendment as
supporting documentation to Claim Number 1165, but did not include the APA.  No supporting
documentation was enclosed with Proof of Claim Number 1226 filed by Meral.  All three proofs of claim
and supporting documentation, if applicable, were filed with American Legal Claim Services, Inc., the
claims, noticing and balloting agent.  As the proofs of claim are not otherwise in the record, they are
attached as exhibits to this opinion.

validity exists, and the burden remains on Meral to prove the validity of a security

interest purportedly granted by the APA by a preponderance of the evidence. *Harford*

*Sands*, 372 F.3d at 640.

B.    The APA Not Only Lacks the Clear, Unambiguous Language to Grant
      Meral a Security Interest, but Also Explicitly Provides that No Security
      Interest Exists in the Debtors' Property.

The Debtors first object to Claim Number 1232 on the basis that the APA does

not provide Meral with any security interest in the Debtors' property. As a preliminary

matter, West Virginia law governs the interpretation of the APA. Joint Ex. A ¶ 12(d).

Article 9 of the Uniform Commercial Code ("UCC")[11] governs any alleged security

interest in personal property, including the Other Assets, but not interests in real property,

such as the Leases. *See* W. Va. Code § 46-9-109(a)(1), (d)(11). The West Virginia Code

includes separate recordation requirements applicable to creation and perfection of a lien

on interests in real property, such as the Leases. *See* W. Va. Code § 40-1-9 (listing the

requirements for perfection of an interest in real property).

As both the Debtors and Meral have noted, it is a requirement of a valid security

interest that the security agreement or other document intended to establish a security

interest contain a "written expression by the debtor granting a security interest." *In re*

*Modafferi*, 45 B.R. 370, 373 (S.D.N.Y. 1985). Further, where a document lacks

"'granting' language," it fails to sufficiently "demonstrate a present intent to pledge

collateral." *Id.*; *see also Transp. Equip. Co. v. Guaranty State Bank*, 518 F.2d 377, 380

---

[11] The West Virginia Commercial Code was adopted from the Uniform Commercial Code. When the Court
cites to opinions from other states interpreting that state's commercial code, it does so with the
understanding that the other state has adopted the same subsections from the Uniform Commercial Code as
West Virginia. *In re Weir-Penn, Inc.*, 344 B.R. 791, 794 (Bankr. N.D.W. Va. 2006).

(10th Cir. 1975) (finding that courts "almost uniformly come to the conclusion that in order for a security agreement to be effective it must contain language which specifically creates or grants a security interest in the collateral described.").  In finding that the financing statement in *Modafferi* did not grant a security interest in the underlying collateral, the court noted that "[a]t a minimum, the 'terms' must recite the obligation secured."  45 B.R. at 374 (citation omitted) (finding that the financing statement did not qualify as a security agreement under Art. 9 of the UCC).  Further, "[w]hile there are no magic words which create a security interest there must be language in the instrument which 'leads to the logical conclusion that it was the intention of the parties that a security interest be created."'  *Mitchell v. Shepherd Mall State Bank*, 458 F.2d 700, 703 (10th Cir. 1972) (quoting *Evans v. Everett*, 279 183 S.E.2d 109, 113 (N.C. 1971)).

First, Meral argues that APA ¶ 3(a)(vii) contains language that grants Meral a security interest where that section provides that Meral "shall be entitled to enter the premises of the Leases and to exclude [the Debtors] therefrom and . . . immediately maintain operating the mines located on the premises of the Leases . . . ."  The Debtors respond that, in arguing for this "right of reentry" language, Meral confuses a contractual right with the grant of a security interest in collateral.  However, the Court need not distinguish between the equitable right of reentry and a retained property interest because APA ¶ 3(a)(vii) specifically denies that such a security interest is conveyed with respect to that paragraph.  APA ¶ 3(a)(vii) expressly states, "This section 3(a)(vii) shall not be constructed as (i) a lien upon any of the real, personal or mixed property of [South Fork] or its affiliates or a security interest granted by [South Fork] therein . . . ."  Thus, it appears that the clear intent of South Fork and Meral was specifically *not* to create any

type of security interest as a result of this paragraph, so Meral's right of reentry argument is misguided.  Thus, the "right of reentry" language listed above this clause cannot grant Meral a security interest because the clear and unambiguous language states otherwise.

Under West Virginia law, which governs the interpretation of the APA, "there can be no doubt that it is for a trial court to determine whether the terms of an integrated agreement are unambiguous and, if so, to construe the contract according to its plain meaning."  *Fraternal Order of Police, Lodge No. 69 v. City of Fairmont*, 468 S.E.2d 712, 715 (W. Va. 1996).  The Court's task is "not to rewrite the terms of contact [sic] between the parties; instead, [the Court is] to enforce it as written."  *Id.* at 716.  Moreover, "[t]he mere fact that parties do not agree to the construction of a contract does not render it ambiguous.  The question as to whether a contract is ambiguous is a question of law to be determined by the court." *Id.* at 717-18 (internal quotation marks omitted) (quoting *Int'l Nickel Co. v. Commonwealth Gas Corp.*, 163 S.E.2d 677, 680 (W. Va. 1968)).  In this case, the language in Paragraph 3(a)(vii) of the APA is clear that no security interest was granted by that section, and the Court will not attempt to rewrite the APA to grant Meral a security interest that does not exist by the terms of the agreement.

Even if the Court were to look past the explicit language in APA ¶ 3(a)(vii) specifically not providing for any lien or security interest in the Debtors' property, the "right of reentry" language in that paragraph does not convey a property right because Meral fails to satisfy the statutory requirement under the West Virginia Code for a "right of reentry" property interest.  West Virginia courts have held that, to enforce a "right to reenter," as a property interest, and exclude a party in possession of the property, the asserting party must have *legal title* to the property and must be entitled to *immediate*

*possession* of that property.  *See, e.g.*, *Marthens v. B & O Railroad Co.*, 289 S.E.2d 706,

712 n.2 (W. Va. 1982) ("Ejectment is an action for the protection of one with good legal

title to the land who is entitled to immediate possession."); *Sands v. Holbert*, 117 S.E.

896, 897 (W. Va. 1923) (citations omitted) ("It is well established that unless plaintiff has

the legal title he cannot maintain an action of ejectment."); *see also Stewart v. Workman*,

102 S.E. 474, 475 (W. Va. 1920) (finding that the right to reenter can only be reserved by

a grantor holding title to the property).

    In this case, Meral does not hold legal title to the property that is subject to the

Leases, and thus, cannot meet its burden of establishing an enforceable right to reenter.

Meral is also not entitled to immediate possession of the property that is subject to the

Leases.  Prior to exercising any alleged right to reenter, APA ¶ 3(a)(vii) requires Meral to

first obtain the consent of WPP LLC.  Meral has introduced no evidence that this consent

was given.  Thus, Meral is not entitled to immediate possession, and fails to meet its

burden of proving a security interest in the Debtors' property exists.

      C.       <u>Even if the Purported Security Interest Did Exist, Meral Has Not Perfected
the Security Interest as Required by Rule 3001(d).</u>

     Meral also argues that the previous recorded Memorandum of Leases, which

references the Leases found in the APA, should lead the Court to determine that Meral

has a valid security interest.  Meral cites *In re 1550 Wilson Boulevard, L.P.* for the

proposition that a lease assignment can create a valid, perfected security interest.  206

B.R. 812 (E.D. Va. 1996).  In *1550 Wilson Boulevard*, in the cash collateral context, the

court held, under Virginia law, that a lender's security interest under an assignment of

leases and rents is perfected when the assignment of rents is recorded in the appropriate

land records along with a leasehold deed of trust.  *Id.* at 816 (citing Va. Code § 55-220.1).

As the Debtors aptly note, *1550 Wilson Boulevard* actually supports a finding that Meral

has not properly created or perfected its interest in the Leases by not entering into or

filing a leasehold mortgage, assignment of rents and leases, collateral assignment of

lease, or some other analogous document evidencing a security interest.  In order to have

a valid security interest, the claimant must have perfected that interest.  *See First Nat'l*

*Bank of Mercer County v. Rankin (In re Rankin)*, 102 B.R. 439, 443 (Bankr. W.D. Pa.

1989).

A security interest in leases must be recorded pursuant to applicable state law

property recordation requirements, in this case, West Virginia's requirements, to achieve

perfection.  *See, e.g.*, *In re DBSI, Inc.*, 432 B.R. 126, 132 (Bankr. D. Del. 2010).  Under

West Virginia law, to perfect an interest in real property, including an interest in leases,

the holder of the security interest must record documentation evidencing its interest in the

leases "in the county wherein the property embraced in such contract, deed, deed of trust

or memorandum of deed of trust or mortgage" is located.  W. Va. Code § 40-1-9.  The

record contains no evidence that Meral made a filing evidencing a security interest.

Further, a recorded memorandum of lease, in and of itself, does not create a perfected

security interest where no security interest exists to begin with.  *See DBSI*, 432 B.R. at

133.  Thus, Meral does not have any perfected security interest in the assets of the

Debtors.  Accordingly, the Claim Objection is sustained.

**II.     Motion for Relief**

Once a debtor files a bankruptcy petition, the automatic stay of 11 U.S.C. § 362(a)

stays most legal proceedings against the debtor.  *See* 11 U.S.C. § 362(a).  Nevertheless,

the Bankruptcy Code also grants discretion to the bankruptcy courts to lift the stay "for

cause."  *See* 11 U.S.C. § 362(d)(1).  The Code does not define what constitutes "cause,"

so "courts must determine when discretionary relief is appropriate on a case-by-case

basis." *See, e.g.*, *Robbins v. Robbins (In re Robbins)*, 964 F.2d 342, 345 (4th Cir. 1992)

(citations omitted).  Deciding whether to lift the stay is within the discretion of the

bankruptcy court.  *In re Robbins*, 964 F.2d at 345 (citing *In re Boomgarden*, 780 F.2d

657, 660 (7th Cir. 1985)); *In re Joyner*, 416 B.R. 190, 191 (Bankr. M.D.N.C. 2009).

In determining whether to grant relief from the automatic stay, courts "must

balance potential prejudice to the bankruptcy debtor's estate against the hardships that

will be incurred by the person seeking relief from the automatic stay if relief is denied."

*In re Robbins*, 964 F.2d at 345 (citing *Peterson v. Cundy (In re Peterson)*, 116 B.R. 247,

249 (D. Colo. 1990)).  "While Congress intended the automatic stay to have broad

application, the legislative history to [S]ection 362 clearly indicates Congress'

recognition that the stay should be lifted in appropriate circumstances."  *In re Robbins*,

964 F.2d at 345.

The initial burden rests on the movant, Meral, to establish a prima facie case to

show that "cause" exists in the first instance.  *Unnamed Citizens A Thru E and Certain

Minor Children v. White (In re White)*, 410 B.R. 195, 201 (Bankr. W.D. Va. 2008).  If

Meral meets its burden of establishing a prima facie case, the burden shifts to the Debtors

to show that "cause" does not exist to lift the stay.  *Id.* (explaining that the movants have

the "initial burden of demonstrating an appropriate basis for relief," but "[o]nce that has been accomplished . . . the ultimate burden of proof rests upon the [d]ebtor to show a lack of cause to grant the . . . [m]otion for [r]elief").[12]

Pursuant to the Motion for Relief, Meral moves for relief from the automatic stay under Section 362(d)(1) "for cause, including the lack of adequate protection of an interest in property of such party in interest" so that Meral may "reassume the lease and protect their interest in said leasehold."  Meral's Mot. for Relief, at 1 (quoting 11 U.S.C. § 362(d)(1)).  The act of reassuming the WPP Coal Mining Lease would constitute an "act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).

As the party seeking relief from stay, Meral "has the burden of showing the existence, the validity, and the perfection of its secured claim against the [p]roperty."  *In re Keen*, No. 13-71705, 2014 WL 6871867, at *6, 2014 Bankr. LEXIS 4896, at *19 (Bankr. W.D. Va. Dec. 3, 2014) (quoting *In re Palham Enters., Inc.*, 376 B.R. 684, 689 (Bankr. N.D. Ill. 2007)).  However, as noted above, Meral does not have a security interest in the Leases or the Other Assets, and absent such, has provided no other basis for entitlement to adequate protection.  *See* Part I, *infra*.  Meral is an unsecured creditor of the Debtors, and has established no alternative grounds for relief under 11 U.S.C. § 362(d).

---

[12] Under 11 U.S.C. § 362(g), "while the party seeking relief from the stay has the initial burden of production or going forward with the evidence to establish a prima facie case for relief, the burden of proof, i.e., the burden of persuasion, rests on the party opposing relief on all issues except the existence of equity." *In re Joyner*, 416 B.R. at 192 n.1 (citations omitted).

<u>CONCLUSION</u>

For the foregoing reasons, the Court will sustain the Debtors' Objection to Claim with respect to Proof of Claim Number 1232, disallow Claim No. 1232 as a secured claim, and allow it as an unsecured claim.  Further, the Court will deny Meral's Motion to Lift the Automatic Stay.  An Order to such effect will be entered contemporaneously herewith.

Decided this 3rd day of February, 2016.

UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT 1

| United States Bankruptcy Court the Western District of Virginia | **PROOF OF CLAIM** |
|---|---|

| In re:<br>Xinergy Ltd., *et al.*<br>Debtors. | Chapter 11<br>Case No. 15-70444 (PMB) |
|---|---|
| Name of Debtor Against Which Claim is Held<br>South Fork Coal Company, LLC | Case No. of Debtor<br>**15-70442** |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

**POSTMARKED**

JUL 24 2015

THIS SPACE IS FOR COURT USE ONLY
~~American Legal Claims~~

Name and address of Creditor : (and name and address where notices should be sent if different from Creditor)

Meral, Inc.
507 Oaken Gate
White Pine, TN 37890

865-397-4038          fbrowning@hughes.net

Telephone number:          Email Address:

Name and address where payment should be sent (if different from above)

Telephone number:          Email Address:

☐ Check this box to indicate that this form amends a previously filed claim.

**Court Claim Number:** _____
(*If known*)

Filed on: _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**RECEIVED**

JUL 27 2015

American Legal Claims

In re: XINERGY LTD.
Case No: 15-70444
CLAIM 1165

1. Amount of Claim as of Date Case Filed: $ 637,460.55

If all of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all of your claim is entitled to priority, complete Item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges.

☐ Check this box if claim is for a claim related to goods delivered during the twenty (20) days prior to the (the "Petition Date") pursuant to 11 U.S.C. §503(b)(9).

2. Basis for Claim: Lease purchase agreement
(See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor: _____
3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

4. Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff:  ☒ Real Estate   ☐ Motor Vehicle   ☐ Other
Describe: Lease Purchase Agreement

Value of Property: $ 2,000,000.00          Annual Interest Rate 9.5 %

Amount of arrearage and other charges as of time case filed included in secured claim, if any:

$ 0 _____   Basis for perfection: Asset Purchase Agreement

Amount of Secured Claim: $ 637,460.55          Amount Unsecured: $ _____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries or commissions (up to $12,475*), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

Amount entitled to priority:

$ _____

**Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment*

6. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See definition of "redacted" on reverse side.*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

FOR COURT USE ONLY

| Date:<br>7/22/15 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br>/s/Jeffery S. Greene Atty, 321 E. Broadway, Newport TN 37821 423-623-7271 |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

### AMENDMENT TO ASSET PURCHASE AGREEMENT

THIS AMENDMENT TO ASSET PURCHASE AGREEMENT ("Amendment") is made and entered into effective as of the __17__ day of March, 2014, by and between MERAL, INC., a West Virginia corporation ("Seller"), and South Fork Coal Company, LLC, a West Virginia limited liability company ("Purchaser").

### Background:

WHEREAS, Seller and Purchaser entered into that certain Asset Purchase Agreement dated January 31, 2011, (the "Asset Purchase Agreement") pursuant to which Seller sold, assigned, conveyed and transferred to Purchaser all of its right, title and interest in and to certain real property interests and other assets related thereto located in Greenbrier County, West Virginia. Capitalized terms used in this Amendment and not otherwise defined herein shall have the meaning set forth in the Asset Purchase Agreement.

WHEREAS, Section 3(a)(iii) of the Asset Purchase Agreement required Purchaser to make payment of the Second Permitting Payment to Seller in the amount of One Million Dollars ($1,000,000) on the date eighteen (18) months following the date of the First Permitting Payment.

WHEREAS, Seller and Purchaser have agreed to revise payment terms and conditions for the payment of the Second Permitting Payment and desire to document the revised payment terms and conditions upon which Purchaser shall make payment of the Second Permitting payment to Seller.

NOW, THEREFORE, WITNESSETH: That for and in consideration of the promises and the mutual covenants, representations and warranties herein contained, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, Seller and Purchaser hereby agree as follows:

(1) <u>PAYMENT TERMS</u>.  On and subject to the terms and conditions of this Amendment, Purchaser hereby agrees to make payment of the Second Permitting Payment in the principal amount of One Million Dollar ($1,000,000), with compound interest thereon at the rate of Nine and One-Half Percent (9-1/2%) per annum, as follows:

    (a)    <u>Initial Payment</u>.  Purchaser shall pay Seller the amount of Two Hundred Thousand Dollars ($200,000) on April 15, 2014.

    (b)    <u>Quarterly Payments</u>.  Beginning on July 15, 2014, and continuing on the fifteenth (15th) day of each third month thereafter, Purchaser shall make a payment of principal and interest to Seller in the amount of Fifty Thousand Dollars ($50,000), credited first to then outstanding interest and then to principal, until July 15, 2019, at which time all then unpaid interest and principal shall be due and payable. An

1

Amortization Schedule demonstrating the schedule of payments set forth in this Amendment (the "Payment Plan") is attached hereto as Exhibit A.

(2) OTHER TERMS AND CONDITIONS. Additional terms with respect to the Payment Plan are as follows:

(a) Production Benchmark Payments. The Payment Plan will be revised as follows:

(i) Upon the amount of coal produced and sold from the Greenbrier County property averaging at least forty thousand (40,000) tons per month for a continuous period of two (2) calendar months at an average sales price of at least $105.00 per ton, Purchaser shall begin making increased quarterly payments of $125,000.00 and if the then unpaid balance of principal owed to Seller by Purchaser is more than $400,000.00, Purchaser shall make a lump sum payment to Seller in the amount of $200,000.00 within the next six (6) calendar months.

(ii) Upon the amount of coal produced and sold from the Greenbrier County property averaging at least fifty thousand (50,000) tons per month for a continuous period of two (2) calendar months at an average sales price of at least $105.00 per ton, Purchaser shall within forty-five (45) days pay all then remaining unpaid principal and interest.

(b) Acceleration upon Change of Ownership.  Upon the change of ownership of fifty-one percent (51%) or more of the membership interests of Purchaser, by the giving of written notice by Seller to Purchaser within ten (10) business days after receiving notice of such change of ownership from Purchaser or otherwise acquiring knowledge of such change of ownership, Seller may declare the then remaining unpaid amount of principal with interest thereon to be due and payable by Purchaser to Seller within ten (10) business days; provided, however, a transfer of fifty-one percent (51%) or more of the membership interests of Purchaser to an affiliate or parent, direct or indirect, of Purchaser which is under common control by the same entity that controls Purchaser shall not be deemed a change of ownership and control of Purchaser.

(c) Prepayment.  Purchaser shall have the right to prepay all or part of the outstanding principal with interest thereon only until the date payment of such principal is due from Purchaser.

(3) MISCELLANEOUS. Additional general terms to this Amendment are as follows:

(a) Amendment. The terms and conditions of the Asset Purchase Agreement shall remain in full force and effect, unmodified, except as expressly modified by this Amendment.

2

(b)    <u>Governing Law</u>. This Amendment shall be governed by, and construed in accordance with, the laws of the State of West Virginia without regard to its conflicts of law principles.

<u>Electronic Signature and Counterparts.</u>  This Amendment may be executed by legal electronic signature and in one or more counterparts, any one of which need not contain the signatures of more than one party but all of which taken together shall constitute one and the same Amendment.

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed by their respective duly authorized officers as of the day and year first above written.

Seller:                                          Purchaser:

MERAL, INC.                                SOUTH FORK COAL COMPANY, LLC

By: Frederick F. Browning              By: Michael R. Castle
Its: President

                                                    Its:  CFO

3

STATE OF WEST VIRGINIA,

COUNTY OF MERCER, TO-WIT:


    I, Nancy R. Kornegay_____, a Notary Public in and for the County and State aforesaid, do hereby certify that Frederick F. Browning, who signed the preceding AGREEMENT for Meral, Inc., a West Virginia corporation, has this day before me in my said County acknowledged that AGREEMENT to be the act and deed of said corporation.

    Given under my hand and seal this the 17th day of March, 2014.


OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
NANCY R. KORNEGAY
RT. 1, BOX 710-T
PETERSTOWN, WV 24963
My commission expires September 30, 2014

_____
Notary Public

(NOTARIAL SEAL)

4

STATE OF ~~WEST VIRGINIA~~, *Tennessee*

COUNTY OF ___*Knox*___ , TO-WIT:

I, *Sarah C. Sharp* , a Notary Public in and for the County and State aforesaid, do hereby certify that *Michael R. Castle* , who signed the preceding AGREEMENT for South Fork Coal Company, LLC, a West Virginia limited liability company, has this day before me in my said County acknowledged that AGREEMENT to be the act and deed of that limited liability company.

Given under my hand and seal this the *20th* day of March, 2014.

*Sarah C. Sharp*

Notary Public

(NOTARIAL SEAL)

SARAH C. SHARP
STATE OF TENNESSEE
NOTARY PUBLIC
EXP. 8-29-2015
KNOX COUNTY

03/11/2014  12:10:23 PM  Page 1

Note Payable Meral, Inc.

Compound Period ......... :  Quarterly

Nominal Annual Rate .... :  9.500 %

CASH FLOW DATA

| | Event | Date | Amount | Number | Period | End Date |
|---|---|---|---|---|---|---|
| 1 | Loan | 04/15/2014 | 1,000,000.00 | 1 | | |
| 2 | Payment | 04/15/2014 | 200,000.00 | 1 | | |
| 3 | Payment | 07/15/2014 | 50,000.00 | 20 | Quarterly | 04/15/2019 |
| 4 | Payment | 07/15/2019 | 18,431.58 | 1 | | |

AMORTIZATION SCHEDULE - Normal Amortization

| | Date | Payment | Interest | Principal | Balance |
|---|---|---|---|---|---|
| Loan | 04/15/2014 | | | | 1,000,000.00 |
| 1 | 04/15/2014 | 200,000.00 | 0.00 | 200,000.00 | 800,000.00 |
| 2 | 07/15/2014 | 50,000.00 | 19,000.00 | 31,000.00 | 769,000.00 |
| 3 | 10/15/2014 | 50,000.00 | 18,263.75 | 31,736.25 | 737,263.75 |
| 2014 Totals | | 300,000.00 | 37,263.75 | 262,736.25 | |
| 4 | 01/15/2015 | 50,000.00 | 17,510.01 | 32,489.99 | 704,773.76 |
| 5 | 04/15/2015 | 50,000.00 | 16,738.38 | 33,261.62 | 671,512.14 |
| 6 | 07/15/2015 | 50,000.00 | 15,948.41 | 34,051.59 | 637,460.55 |
| 7 | 10/15/2015 | 50,000.00 | 15,139.69 | 34,860.31 | 602,600.24 |
| 2015 Totals | | 200,000.00 | 65,336.49 | 134,663.51 | |
| 8 | 01/15/2016 | 50,000.00 | 14,311.76 | 35,688.24 | 566,912.00 |
| 9 | 04/15/2016 | 50,000.00 | 13,464.16 | 36,535.84 | 530,376.16 |
| 10 | 07/15/2016 | 50,000.00 | 12,596.43 | 37,403.57 | 492,972.59 |
| 11 | 10/15/2016 | 50,000.00 | 11,708.10 | 38,291.90 | 454,680.69 |
| 2016 Totals | | 200,000.00 | 52,080.45 | 147,919.55 | |
| 12 | 01/15/2017 | 50,000.00 | 10,798.67 | 39,201.33 | 415,479.36 |
| 13 | 04/15/2017 | 50,000.00 | 9,867.63 | 40,132.37 | 375,346.99 |
| 14 | 07/15/2017 | 50,000.00 | 8,914.49 | 41,085.51 | 334,261.48 |
| 15 | 10/15/2017 | 50,000.00 | 7,938.71 | 42,061.29 | 292,200.19 |
| 2017 Totals | | 200,000.00 | 37,519.50 | 162,480.50 | |
| 16 | 01/15/2018 | 50,000.00 | 6,939.75 | 43,060.25 | 249,139.94 |
| 17 | 04/15/2018 | 50,000.00 | 5,917.07 | 44,082.93 | 205,057.01 |
| 18 | 07/15/2018 | 50,000.00 | 4,870.10 | 45,129.90 | 159,927.11 |
| 19 | 10/15/2018 | 50,000.00 | 3,798.27 | 46,201.73 | 113,725.38 |
| 2018 Totals | | 200,000.00 | 21,525.19 | 178,474.81 | |
| 20 | 01/15/2019 | 50,000.00 | 2,700.98 | 47,299.02 | 66,426.36 |
| 21 | 04/15/2019 | 50,000.00 | 1,577.63 | 48,422.37 | 18,003.99 |
| 22 | 07/15/2019 | 18,431.58 | 427.59 | 18,003.99 | 0.00 |
| 2019 Totals | | 118,431.58 | 4,706.20 | 113,725.38 | |

03/11/2014  12:10:23 PM  Page 2

Note Payable Meral, Inc.

| Date | Payment | Interest | Principal | Balance |
|------|---------|----------|-----------|---------|
| Grand Totals | 1,218,431.58 | 218,431.58 | 1,000,000.00 | |



# EXHIBIT 2

| United States Bankruptcy Court the Western District of Virginia | | **PROOF OF CLAIM** |
|---|---|---|

| In re: Xinergy Ltd., *et al.* Debtors. | Chapter 11 Case No. 15-70444 (PMB) |
|---|---|
| Name of Debtor Against Which Claim is Held **South Fork Coal Company LLC** | Case No. of Debtor **15-70442** |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

*POSTMARKED*
JUL 29 2015

THIS SPACE IS FOR COURT USE ONLY

American Legal Claims

| Name and address of Creditor : (and name and address where notices should be sent if different from Creditor) Meral Inc. 507 Oaken Gate White Pine, TN 37890 865-397-4038          fbrowning@hughes.net Telephone number:          Email Address: | ☐ Check this box to indicate that this claim amends a previously filed claim. **Court Claim Number:** _____ *(If known)* Filed on: _____ |
|---|---|

*RECEIVED*
JUL 30 2015

American Legal Claims

In re: XINERGY LTD.
Case No: 15-70444
CLAIM 1226

| Name and address where payment should be sent (if different from above) Telephone number:          Email Address: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. ☐ Check this box if you are the debtor or trustee in this case. |
|---|---|

1. **Amount of Claim as of Date Case Filed:** $ 109,920.55

   If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.

   If all or part of your claim is entitled to priority, complete Item 5.

   ☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges.

   ☐ Check this box if claim is for a claim related to goods delivered during the twenty (20) days prior to (the "Petition Date"), pursuant to 11 U.S.C. § 503(b)(9).

2. **Basis for Claim:** Lease/Purchase Agreement
   (See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** _____
   **3a. Debtor may have scheduled account as:** _____
   (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
   Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

   Nature of property or right of setoff: ■ Real Estate   ☐ Motor Vehicle   ☐ Other
   Describe: Lease purchase agreement

   Value of Property: $ 2,000,000.00          Annual Interest Rate 9 %

   Amount of arrearage and other charges as of time case filed included in secured claim, if any:

   $ 109,920.55          Basis for perfection: lease/purchase agreement

   **Amount of Secured Claim:** $ 109,920.55          **Amount Unsecured:** $ _____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

   Specify the priority of the claim:

   ☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

   ☐ Wages, salaries or commissions (up to $12,475*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

   ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

   ☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

   ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

   ☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(____).

   **Amount entitled to priority:**

   $ _____

   *Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment*

6. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See definition of "redacted" on reverse side.)*
   DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
   If the documents are not available, please explain:

**FOR COURT USE ONLY**

| Date: 06/22/2015 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. /s/ Jeffery S. Greene, Atty, 321E Broadway, Newport, TN 37821 423-623-7271 |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.



FedEx Express

earthsmart
FedEx carbon-neutral
envelope shipping
RECEIVED
JUL 30 2015

American Legal Claims

**1 From**
Date 7/29/15
Sender's Name Jeffrey S. Greene
Company McSween, McSween, & Greene, PLLC
Address 301 E. Broadway
City Newport    State TN    ZIP 37821
Phone 423 623-7371

**2 Your Internal Billing Reference**
Meraline - USA

**3 To**
Recipient's Name Xinergy Ltd. Claims Ctr.
Company % American Legal Claims Services, LLC
Address 5985 Richard St.    Ste 3
City Jacksonville    State FL    ZIP 32216

8045 5473 5450

RT 46
FZ
1  C
16:00  5450
07:30

FedEx
8045 5473 5450

XH NRBA

THU – 30 JUL AA
STANDARD OVERNIGHT

32216
FL-US
JAX

# EXHIBIT 3

| United States Bankruptcy Court<br>the Western District of Virginia | **PROOF OF CLAIM** |
|---|---|

| In re:<br>Xinergy Ltd., *et al.*<br>Debtors. | Chapter 11<br>Case No. 15-70444 (PMB) |
|---|---|

| Name of Debtor Against Which Claim is Held<br>South Fork coal Company, LLC | Case No of Debtor<br>15-70442 |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

*POSTMARKED*

JUL 30 2015

American Legal Claims

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor : (and name and address where notices should be sent if different from Creditor)

Meral, Inc.
507 Oaken Gate
White Pine, TN 37890

fbrowning@hughes.net

Telephone number: **865-397-4038**   Email Address:

Name and address where payment should be sent (if different from above)

Telephone number:     Email Address:

☒ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: **1165**
*(If known)*

Filed on: **7-27-2015**

*RECEIVED*

JUL 31 2015

American Legal Claims

In re: XINERGY LTD.
Case No: 15-70444
CLAIM 1232

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:** $ **671,812.14**

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete Item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges.

☐ Check this box if claim is for a claim related to goods delivered during the twenty (20) days prior to the "Petition Date"), pursuant to 11 U.S.C. §503(b)(9).

**2. Basis for Claim: Lease Purchase Agreement**
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** _____
   3a. Debtor may have scheduled account as: _____
   (See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff: ☒ Real Estate   ☐ Motor Vehicle   ☐ Other
Describe: **Lease Purchase agreement**

Value of Property: $ **2,000,000.00**    Annual Interest Rate **9.5** %

Amount of arrearage and other charges as of time case filed included in secured claim, if any:

$ **0**     Basis for perfection: _____

**Amount of Secured Claim:** $ **671,812.14**   **Amount Unsecured:** $ _____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries or commissions (up to $12,475*), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**Amount entitled to priority:**

$ _____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment*

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

FOR COURT USE ONLY

| Date:<br>7/22/15 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>/s/ Jeffery S. Greene Atty, 321 E. Broadway, Newport TN 37821 423-623-7271 |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## AMENDMENT TO ASSET PURCHASE AGREEMENT

THIS AMENDMENT TO ASSET PURCHASE AGREEMENT ("Amendment") is made and entered into effective as of the _17_ day of March, 2014, by and between MERAL, INC., a West Virginia corporation ("Seller"), and South Fork Coal Company, LLC, a West Virginia limited liability company ("Purchaser").

### Background:

WHEREAS, Seller and Purchaser entered into that certain Asset Purchase Agreement dated January 31, 2011, (the "Asset Purchase Agreement") pursuant to which Seller sold, assigned, conveyed and transferred to Purchaser all of its right, title and interest in and to certain real property interests and other assets related thereto located in Greenbrier County, West Virginia. Capitalized terms used in this Amendment and not otherwise defined herein shall have the meaning set forth in the Asset Purchase Agreement.

WHEREAS, Section 3(a)(iii) of the Asset Purchase Agreement required Purchaser to make payment of the Second Permitting Payment to Seller in the amount of One Million Dollars ($1,000,000) on the date eighteen (18) months following the date of the First Permitting Payment.

WHEREAS, Seller and Purchaser have agreed to revise payment terms and conditions for the payment of the Second Permitting Payment and desire to document the revised payment terms and conditions upon which Purchaser shall make payment of the Second Permitting payment to Seller.

NOW, THEREFORE, WITNESSETH: That for and in consideration of the promises and the mutual covenants, representations and warranties herein contained, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, Seller and Purchaser hereby agree as follows:

(1) <u>PAYMENT TERMS</u>. On and subject to the terms and conditions of this Amendment, Purchaser hereby agrees to make payment of the Second Permitting Payment in the principal amount of One Million Dollar ($1,000,000), with compound interest thereon at the rate of Nine and One-Half Percent (9-1/2%) per annum, as follows:

   (a)  <u>Initial Payment</u>.  Purchaser shall pay Seller the amount of Two Hundred Thousand Dollars ($200,000) on April 15, 2014.

   (b)  <u>Quarterly Payments</u>.  Beginning on July 15, 2014, and continuing on the fifteenth (15th) day of each third month thereafter, Purchaser shall make a payment of principal and interest to Seller in the amount of Fifty Thousand Dollars ($50,000), credited first to then outstanding interest and then to principal, until July 15, 2019, at which time all then unpaid interest and principal shall be due and payable. An

1

Amortization Schedule demonstrating the schedule of payments set forth in this
Amendment (the "Payment Plan") is attached hereto as Exhibit A.

(2) OTHER TERMS AND CONDITIONS. Additional terms with respect to the Payment
Plan are as follows:

(a)   Production Benchmark Payments. The Payment Plan will be revised as follows:
      (i)   Upon the amount of coal produced and sold from the Greenbrier County
            property averaging at least forty thousand (40,000) tons per month for a
            continuous period of two (2) calendar months at an average sales price of
            at least $105.00 per ton, Purchaser shall begin making increased quarterly
            payments of $125,000.00 and if the then unpaid balance of principal owed
            to Seller by Purchaser is more than $400,000.00, Purchaser shall make a
            lump sum payment to Seller in the amount of $200,000.00 within the next
            six (6) calendar months.
      (ii)  Upon the amount of coal produced and sold from the Greenbrier County
            property averaging at least fifty thousand (50,000) tons per month for a
            continuous period of two (2) calendar months at an average sales price of
            at least $105.00 per ton, Purchaser shall within forty-five (45) days pay all
            then remaining unpaid principal and interest.

(b)   Acceleration upon Change of Ownership.   Upon the change of ownership of
      fifty-one percent (51%) or more of the membership interests of Purchaser, by the
      giving of written notice by Seller to Purchaser within ten (10) business days after
      receiving notice of such change of ownership from Purchaser or otherwise
      acquiring knowledge of such change of ownership, Seller may declare the then
      remaining unpaid amount of principal with interest thereon to be due and payable
      by Purchaser to Seller within ten (10) business days; provided, however, a transfer
      of fifty-one percent (51%) or more of the membership interests of Purchaser to an
      affiliate or parent, direct or indirect, of Purchaser which is under common control
      by the same entity that controls Purchaser shall not be deemed a change of
      ownership and control of Purchaser.

(c)   Prepayment.   Purchaser shall have the right to prepay all or part of the
      outstanding principal with interest thereon only until the date payment of such
      principal is due from Purchaser.

(3) MISCELLANEOUS.  Additional general terms to this Amendment are as follows:

(a)   Amendment. The terms and conditions of the Asset Purchase Agreement shall
      remain in full force and effect, unmodified, except as expressly modified by this
      Amendment.

2

(b)     Governing Law. This Amendment shall be governed by, and construed in accordance with, the laws of the State of West Virginia without regard to its conflicts of law principles.

Electronic Signature and Counterparts. This Amendment may be executed by legal electronic signature and in one or more counterparts, any one of which need not contain the signatures of more than one party but all of which taken together shall constitute one and the same Amendment.

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed by their respective duly authorized officers as of the day and year first above written.

Seller:

MERAL, INC.

By:  Frederick F. Browning
Its:  President

Purchaser:

SOUTH FORK COAL COMPANY, LLC

By: Michael R. Castle

Its:  CFO

STATE OF WEST VIRGINIA,

COUNTY OF MERCER, TO-WIT:

I, Nancy R. Kornegay, a Notary Public in and for the County and State aforesaid, do hereby certify that Frederick F. Browning, who signed the preceding AGREEMENT for Meral, Inc., a West Virginia corporation, has this day before me in my said County acknowledged that AGREEMENT to be the act and deed of said corporation.

Given under my hand and seal this the 17th day of March, 2014.

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
NANCY R. KORNEGAY
RT. 1, BOX 710-T
PETERSTOWN, WV 24963
My commission expires September 30, 2014

_____
Notary Public

(NOTARIAL SEAL)

4

STATE OF ~~WEST VIRGINIA~~, *Tennessee*

COUNTY OF _Knox_ , TO-WIT:


I, *Sarah C. Sharp* , a Notary Public in and for the
County and State aforesaid, do hereby certify that *Michael R. Castle* , who
signed the preceding AGREEMENT for South Fork Coal Company, LLC, a West
Virginia limited liability company, has this day before me in my said County
acknowledged that AGREEMENT to be the act and deed of that limited liability
company.

Given under my hand and seal this the 20th day of March, 2014.


Notary Public

(NOTARIAL SEAL)

Note Payable Meral, Inc.

Compound Period ......... :  Quarterly

Nominal Annual Rate .... :  9.500 %

CASH FLOW DATA

| | Event | Date | Amount | Number | Period | End Date |
|---|---|---|---|---|---|---|
| 1 | Loan | 04/15/2014 | 1,000,000.00 | 1 | | |
| 2 | Payment | 04/15/2014 | 200,000.00 | 1 | | |
| 3 | Payment | 07/15/2014 | 50,000.00 | 20 | Quarterly | 04/15/2019 |
| 4 | Payment | 07/15/2019 | 18,431.58 | 1 | | |

AMORTIZATION SCHEDULE - Normal Amortization

| | Date | Payment | Interest | Principal | Balance |
|---|---|---|---|---|---|
| Loan | 04/15/2014 | | | | 1,000,000.00 |
| 1 | 04/15/2014 | 200,000.00 | 0.00 | 200,000.00 | 800,000.00 |
| 2 | 07/15/2014 | 50,000.00 | 19,000.00 | 31,000.00 | 769,000.00 |
| 3 | 10/15/2014 | 50,000.00 | 18,263.75 | 31,736.25 | 737,263.75 |
| 2014 Totals | | 300,000.00 | 37,263.75 | 262,736.25 | |
| 4 | 01/15/2015 | 50,000.00 | 17,510.01 | 32,489.99 | 704,773.76 |
| 5 | 04/15/2015 | 50,000.00 | 16,738.38 | 33,261.62 | 671,512.14 |
| 6 | 07/15/2015 | 50,000.00 | 15,948.41 | 34,051.59 | 637,460.55 |
| 7 | 10/15/2015 | 50,000.00 | 15,139.69 | 34,860.31 | 602,600.24 |
| 2015 Totals | | 200,000.00 | 65,336.49 | 134,663.51 | |
| 8 | 01/15/2016 | 50,000.00 | 14,311.76 | 35,688.24 | 566,912.00 |
| 9 | 04/15/2016 | 50,000.00 | 13,464.16 | 36,535.84 | 530,376.16 |
| 10 | 07/15/2016 | 50,000.00 | 12,596.43 | 37,403.57 | 492,972.59 |
| 11 | 10/15/2016 | 50,000.00 | 11,708.10 | 38,291.90 | 454,680.69 |
| 2016 Totals | | 200,000.00 | 52,080.45 | 147,919.55 | |
| 12 | 01/15/2017 | 50,000.00 | 10,798.67 | 39,201.33 | 415,479.36 |
| 13 | 04/15/2017 | 50,000.00 | 9,867.63 | 40,132.37 | 375,346.99 |
| 14 | 07/15/2017 | 50,000.00 | 8,914.49 | 41,085.51 | 334,261.48 |
| 15 | 10/15/2017 | 50,000.00 | 7,938.71 | 42,061.29 | 292,200.19 |
| 2017 Totals | | 200,000.00 | 37,519.50 | 162,480.50 | |
| 16 | 01/15/2018 | 50,000.00 | 6,939.75 | 43,060.25 | 249,139.94 |
| 17 | 04/15/2018 | 50,000.00 | 5,917.07 | 44,082.93 | 205,057.01 |
| 18 | 07/15/2018 | 50,000.00 | 4,870.10 | 45,129.90 | 159,927.11 |
| 19 | 10/15/2018 | 50,000.00 | 3,798.27 | 46,201.73 | 113,725.38 |
| 2018 Totals | | 200,000.00 | 21,525.19 | 178,474.81 | |
| 20 | 01/15/2019 | 50,000.00 | 2,700.98 | 47,299.02 | 66,426.36 |
| 21 | 04/15/2019 | 50,000.00 | 1,577.63 | 48,422.37 | 18,003.99 |
| 22 | 07/15/2019 | 18,431.58 | 427.59 | 18,003.99 | 0.00 |
| 2019 Totals | | 118,431.58 | 4,706.20 | 113,725.38 | |

Note Payable Meral, Inc.

| Date | Payment | Interest | Principal | Balance |
|------|---------|----------|-----------|---------|
| Grand Totals | 1,218,431.58 | 218,431.58 | 1,000,000.00 | |



earthsmart

FedEx carbon-neutral
envelope shipping

Align top of FedEx Express® shipping label here.

FedEx
Express

**NEW** Package
US Airbill

FedEx
Tracking
Number   8045 5473 5440

**1 From**

Date  7/30/15

Sender's
Name   Jeffery S. Greene   Phone  423 623-7

Company   McSween, McSween, & Greene, PLLC

Address   321 E. Broadway

City   Newport   State  TN   ZIP  37821

**2 Your Internal Billing Reference**   Meral, Inc - JSG

**3 To**

Recipient's
Name   Xinergy Ltd. Claims Ctr   Phone

Company  c/o American Legal Claims Services, LLC

Address   5985 Richard St.   Ste. 3

City   Jacksonville   State  FL   ZIP  32216

**RECEIVED**

**JUL 31 2015**

American Legal Claims

8045 5473 5440

FedEx
0200   8045 5473 5440

**FRI - 31 JUL AA
STANDARD OVERNIGHT**

**XH NRBA**

**32216**
FL-US
**JAX**

FID 34239# 3RJUL15 GCYA   537C1/8666/EE4B

**4**
- [ ] FedEx Priority Overnight
- [x] FedEx Standard Overnight
- [ ] FedEx Express Saver

**5 Packaging**
- [x] FedEx Envelope
- [ ] FedEx Pak
- [ ] FedEx Box
- [ ] FedEx Tube
- [ ] Other

**6 Special Handling and Delivery Signature Options**
- [ ] SATURDAY Delivery
- [ ] No Signature Required
- [ ] Direct Signature
- [ ] Indirect Signature

Does this shipment contain dangerous goods?
- [ ] No
- [ ] Yes
- [ ] Dry Ice
- [ ] Cargo Aircraft Only

**7 Payment**  Bill to:
- [ ] Sender
- [ ] Recipient
- [ ] Third Party
- [ ] Credit Card
- [ ] Cash/Check

Total Packages   Total Weight   Credit Card Auth.

644

RT 46
FZ
1
16:00   C
5440
07.31